**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

OZINE BRIDGEFORTH,
          *Defendant-Appellant.*

No. 04-50183

D.C. No.
CR-00-01220-SVW-
02

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
February 6, 2006—Pasadena, California

Filed March 29, 2006

Before: Alex Kozinski, Stephen S. Trott, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Trott

**COUNSEL**

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Suzanne M. Lachelier, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Monica Knox, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Nancy Kardon, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

TROTT, Circuit Judge:

Ozine Bridgeforth was convicted of two counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846. On appeal, Bridgeforth argues that his right to confrontation was violated when the district court limited cross-examination of a paid informant and admitted two out-of-court statements as admissions of a co-conspirator. He argues also that his sentence violates the Sixth Amendment and that the court erred in sentencing him as a career offender. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm his convictions. However, because Bridgeforth was improperly sentenced as a career offender, we vacate his sentence and remand for resentencing.

## BACKGROUND

This case arises out of two drug transactions observed and recorded by agents of the Federal Bureau of Investigation (FBI). On August 20, 1999, Deshonda Aldridge, a paid informant for the FBI, drove to the 1800 block of East Pine Street in Compton, California, to purchase an ounce of crack cocaine. Aldridge was looking for a man named Steven Rhodes, with whom she had conducted narcotics transactions in the past. While Aldridge was unable to find Rhodes, she did happen upon Ronald Daniels, who offered to sell her the

crack. Daniels, an apparent middleman, did not have the drugs that Aldridge requested. Daniels paged his supplier and, when Bridgeforth showed up on his motorcycle, Daniels told Aldridge, "There he go right here." Bridgeforth rode his motorcycle to the driver's side of Aldridge's car while Daniels was leaning on the passenger-side door. Aldridge gave Daniels $540 for the crack. After Aldridge paid for the drugs, she claimed that Daniels handed the money to Bridgeforth. Daniels and Bridgeforth then left Aldridge for a time. A surveillance agent saw Bridgeforth lead Daniels toward the back of Daniels's house, from where Daniels returned and gave Aldridge the crack she had purchased.

The second transaction took place on September 16, 1999. Aldridge again drove to East Pine Street to purchase drugs from Daniels. FBI Agent Todd Holliday testified that, about three minutes before Aldridge's arrival, Bridgeforth had left the neighborhood on his motorcycle. When Aldridge arrived at the scene and initiated the drug transaction, he told her, "My boy just left." Daniels asked Aldridge to accompany him to his supplier to get the drugs, but, when she refused, he left the area. Bridgeforth then returned and went into Daniels's house. Glenn Owens, who identified himself as Daniels's uncle, came out of the same house and sold Aldridge four ounces of crack for $2,100. The jury heard tape recordings and saw photographs of both drug transactions, although they never saw Bridgeforth actually touch either the drugs or the cash, nor did they hear Bridgeforth incriminate himself on the tape.

When Aldridge had first approached the FBI about becoming a paid informant, she told the FBI agent interviewing her that she had past experience as a drug courier in Michigan. Although the agent inferred that Aldridge had worked for a small-time street hustler, in reality Aldridge had made substantial amounts of money working for a large-scale heroin ring. Aldridge also told the FBI that she had ceased her drug courier activity upon the birth of her daughter; in reality, how-

ever, Aldridge continued to participate in the heroin ring for another two years.

Bridgeforth wanted to impeach Aldridge with her alleged misstatements, arguing that the statements bore on her credibility as a witness. After hearing testimony from the FBI agent who had interviewed Aldridge, however, the district court ruled that Bridgeforth could not cross-examine Aldridge about her statements to the FBI. The court concluded that, because the FBI agent had never asked Aldridge the details of her drug courier activity, Aldridge had not lied.

Bridgeforth also requested permission to impeach Aldridge with evidence of bias stemming from a car crash she had suffered in Nevada prior to Bridgeforth's trial. Shortly after the accident, Nevada police had found alcohol, marijuana, and methamphetamine in Aldridge's blood, as well as marijuana and methamphetamine in her purse. At the time of Aldridge's testimony, she had not been charged in connection with the Nevada incident. Bridgeforth asserted that Aldridge might give biased testimony in order to curry favor with the government and avoid prosecution.

The district court initially ruled that, although defense counsel could ask questions regarding the drugs that Nevada police had found in Aldridge's purse and blood after her car crash, counsel could not inquire about the alcohol or introduce extrinsic evidence of the drugs. However, the court later indicated that it would admit a stipulation into evidence if Aldridge denied using drugs on the day of the crash. The court held also that extrinsic evidence of bias was inadmissible, reasoning that Bridgeforth had failed to make an adequate showing of potential bias because an FBI agent had told Aldridge that the FBI could not help with her problems in Nevada.

On the witness stand, Aldridge denied that she had ever used any drug other than marijuana and stated that she had not

used any drugs the day of her car crash. The court then allowed defense counsel to read to the jury a stipulation that Nevada police had found both marijuana and methamphetamine in Aldridge's purse, as well as in her blood.

The jury found Bridgeforth guilty of two counts of distributing a controlled substance and one count of conspiracy to distribute a controlled substance. Bridgeforth moved for a new trial; the district court denied this motion.

During sentencing, the court explored Bridgeforth's criminal history. In 1989, Bridgeforth was convicted under California Health and Safety Code section 11351.5 of possessing cocaine base for sale. In 1995, he was convicted of assault with a deadly weapon under California Penal Code section 245(a). Section 245(a)(1), assault with a deadly weapon other than a firearm, is punishable either with a term of two, three, or four years in state prison, or with a maximum sentence of one year in county jail. Cal. Penal Code § 245(a)(1). On September 27, 1995, the state court suspended imposition of sentence and placed Bridgeforth on probation. On December 15, 1995, the court terminated probation and imposed a sentence of 365 days in the county jail. After Bridgeforth was convicted in the instant case, he attempted to avoid being sentenced as a career offender by applying to the state court to have his 1995 conviction declared a misdemeanor. On April 16, 2003, the state court declared Bridgeforth's section 245(a) offense a misdemeanor.

Although the Probation Office initially recommended that Bridgeforth be sentenced as a career offender, it later amended the Presentence Report and found that, because the state court had treated Bridgeforth's 1995 conviction as a misdemeanor, the offense did not qualify as a felony crime of violence under the career offender enhancement. Nevertheless, relying on the language of the United States Sentencing Guidelines (Guidelines), the district court concluded that Bridgeforth's 1995 conviction was punishable by a term of

imprisonment exceeding one year. The district court thus found that Bridgeforth had been convicted of the requisite two qualifying felonies and sentenced him as a career offender under section 4B1.1 of the Guidelines. Because the court sentenced Bridgeforth before the Supreme Court issued *United States v. Booker*, 543 U.S. 220 (2005), it treated the Guidelines as mandatory. The court sentenced Bridgeforth to 360 months.

## DISCUSSION

### I The District Court's Limitations on the Impeachment of Informant Aldridge Did Not Violate the Confrontation Clause.

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, a defendant is not entitled to limitless cross-examination. "A limitation on cross examination 'does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness.' " *United States v. Holler*, 411 F.3d 1061, 1066 (9th Cir. 2005) (quoting *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999)). Bridgeforth argues that the district court violated his Confrontation Clause rights when it (1) did not allow him to cross-examine Aldridge on her alleged misstatements to the FBI, and (2) excluded extrinsic evidence of Aldridge's potential bias stemming from her car crash in Nevada. Claims of Confrontation Clause violations are reviewed de novo and are subject to harmless error analysis. *United States v. Shryock*, 342 F.3d 948, 979 (9th Cir. 2003).

That Aldridge may have misrepresented or downplayed to the FBI the extent and length of her prior drug activity is relevant because it reflects upon her veracity. Her car crash in Nevada is also relevant because she might have thought the

FBI could help her avoid prosecution in Nevada, even though she had been told otherwise.

**[2]** However, neither limitation left the jury without sufficient information to appraise Aldridge's motivations and biases. Aldridge testified that one reason she became a paid informant was because she "needed the money." Bridgeforth was able to impeach Aldridge's credibility by eliciting testimony that she was a long-time drug user, that she had received payment for her services in this case, and that she had not paid taxes on any money she made as an informant. While Aldridge testified that she had never done any drugs other than marijuana and that she had not used drugs on the day of the car crash, defense counsel read into evidence a stipulation that Nevada police had found marijuana and methamphetamine in Aldridge's purse and in her blood following the accident. Thus, the jury heard sufficient evidence, including extrinsic evidence that the district court had previously excluded, from which to appraise Aldridge's motivations. Accordingly, there was no Confrontation Clause violation.

## II   The Admission of the Statements of Co-Conspirator Ronald Daniels Did Not Violate the Confrontation Clause.

**[3]** The requirements for admission of a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E) are identical to the requirements of the Confrontation Clause. *Bourjaily v. United States*, 483 U.S. 171, 182 (1987). Therefore, if a statement is admissible under Rule 801(d)(2)(E), the defendant's right of confrontation is not violated. *Id.* In order for a statement to qualify for admission as the statement of a co-conspirator, the following preliminary facts must be shown: (1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy.[1] Fed. R. Evid. 801(d)(2)(E); *see Bour-*

---

[1]This rule survives *Crawford v. Washington*, 541 U.S. 36 (2004), because "co-conspirator statements are not testimonial." *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005).

*jaily*, 483 U.S. at 175. The statement alone is insufficient to prove these preliminary facts. Fed. R. Evid. 801(d)(2). Because Bridgeforth did not object at trial to the district court's decision to admit a co-conspirator's statements, we review their admission for plain error. *See United States v. Musacchio*, 968 F.2d 782, 791 (9th Cir. 1992).

**[4]** Bridgeforth argues that Daniels's statements, "There he go right here," and "My boy just left," were merely idle conversation. He relies on *United States v. Eubanks*, in which we held that certain statements were not made in furtherance of a conspiracy because they were not "designed to induce [the witness's] continued participation in the conspiracy or to allay her fears." 591 F.2d 513, 521 (9th Cir. 1979) (per curiam). In *Eubanks*, the witness testifying to the statements was the common-law wife of the conspirator who had made the statements. *Id.* at 520. The conspirator had told her, among other things, that he was going to Tucson to obtain drugs from another conspirator, that he had spoken to several people on the telephone, and that he was taking her to Phoenix to pick up heroin. *Id.* We held that these statements were not made in furtherance of the conspiracy because they were mere "conversations between conspirators that did nothing to advance the aims of the alleged conspiracy." *Id.* at 521.

**[5]** Daniels's statements are quite different from the statements at issue in *Eubanks*. When Daniels told Aldridge, "There he go right here," he, as an intermediary, was telling her that his supplier was present. This furthered the purpose of the conspiracy because it informed Aldridge, the potential buyer, that Daniels could obtain and deliver the drugs. When Daniels said, "My boy just left," he was telling Aldridge that, although he had a supplier, his supplier was not then present and Aldridge would have to go with Daniels to purchase the drugs. Therefore, because Daniels's statements were designed to facilitate Aldridge's purchase of the drugs, they were made in furtherance of the conspiracy. There was no error, much less plain error, in the admission of the statements.

Bridgeforth argues also that there was no independent evidence of the conspiracy. However, both Aldridge and Agent Holliday testified that Bridgeforth drove his motorcycle up to Aldridge's driver's-side door while Daniels was leaning on her passenger-side door. In addition, Aldridge testified that after she paid Daniels for the drugs, she saw Daniels pass the money to Bridgeforth. Consequently, independent evidence established both the existence of the conspiracy and Bridgeforth's and Daniels's participation in that conspiracy.

### III  Bridgeforth's Sentence Was Improperly Enhanced under the Career Offender Provisions of the Guidelines.

**[6]** A defendant is considered a career offender under the Guidelines

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). In this case, there is no dispute that the first two requirements are satisfied. At issue is the third requirement, regarding Bridgeforth's prior convictions. Bridgeforth concedes that his 1989 conviction for possession of cocaine base qualifies as a felony conviction of a controlled substance offense for purposes of the career offender enhancement. He contends, however, that his 1995 conviction for assault with a deadly weapon is not a felony conviction of a crime of violence because it is a misdemeanor under California law. We review de novo the question of whether a prior conviction falls within the scope of the career offender enhancement. *United States v. Davis*, 932 F.2d 752, 763 (9th Cir. 1991).

**[7]** To qualify as a "crime of violence," the prior conviction must involve the use or threatened use of force and must be "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a). The actual sentence is irrelevant to the categorization of the conviction as a felony under the career offender enhancement. *Davis*, 932 F.2d at 764. The application notes to section 4B1.2 define "prior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 cmt. n.1.

**[8]** Assault with a deadly weapon under California Penal Code section 245(a) is known as a "wobbler" and is punishable either as a felony or a misdemeanor:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by *imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year* . . . .

Cal. Penal Code § 245(a)(1) (emphasis added).[2] Under California law, a wobbler "is a misdemeanor for all purposes" when the judgment results in a punishment "other than imprisonment in the state prison" or when, after a grant of probation without imposition of sentence, the state court "de-

---

[2]It is unclear from the record whether Bridgeforth was charged under section 245(a)(1) or section 245(a)(2), which is reserved for assault with a firearm other than a machine gun. *See* Cal. Penal Code § 245(a)(2). While the underlying facts of the assault involved a handgun, it was Bridgeforth's accomplice who had the gun. Because sections 245(a)(1) and 245(a)(2) both carry a maximum sentence of either four years in the state prison, or one year in county jail when punished as a misdemeanor, however, this uncertainty does not affect our resolution of this case.

clares the offense to be a misdemeanor." Cal. Penal Code
§ 17(b)(1), (3).**³**

We have previously considered whether a wobbler was a
felony for purposes of the career offender enhancement. In
*United States v. Robinson*, the defendant argued that his prior
conviction for a wobbler, battery on a peace officer, was a
misdemeanor because he had received a suspended sentence.
967 F.2d 287, 292-93 (9th Cir. 1992). The state court had sus-
pended the imposition of Robinson's sentence and placed him
on three years' probation on the condition he serve nine

---

**³**In its entirety, Section 17(b) provides as follows:

When a crime is punishable, in the discretion of the court, by
imprisonment in the state prison or by fine or imprisonment in
the county jail, it is a misdemeanor for all purposes under the fol-
lowing circumstances:

(1) After a judgment imposing a punishment other than
imprisonment in the state prison.

(2) When the court, upon committing the defendant to the
Youth Authority, designates the offense to be a misdemeanor.

(3) When the court grants probation to a defendant without
imposition of sentence and at the time of granting probation, or
on application of the defendant or probation officer thereafter, the
court declares the offense to be a misdemeanor.

(4) When the prosecuting attorney files in a court having juris-
diction over misdemeanor offenses a complaint specifying that
the offense is a misdemeanor, unless the defendant at the time of
his or her arraignment or plea objects to the offense being made
a misdemeanor, in which event the complaint shall be amended
to charge the felony and the case shall proceed on the felony
complaint.

(5) When, at or before the preliminary examination or prior to
filing an order pursuant to Section 872 [finding probable cause
that the defendant committed the offense], the magistrate deter-
mines that the offense is a misdemeanor, in which event the case
shall proceed as if the defendant had been arraigned on a misde-
meanor complaint.

Cal. Penal Code § 17(b).

months in jail, but the court later revoked the probation. *Id.* at 292. We noted that neither a grant of probation, nor a suspension of the imposition of sentence, is a judgment imposing a punishment of imprisonment for a term not exceeding one year. In either case, no judgment is actually rendered; only if the state court were to impose sentence and then order its execution stayed would there be a judgment. *Id.* at 293. Because the wobbler did not meet the requirements of California Penal Code section 17(b), we held that Robinson's prior conviction qualified as a felony under the career offender enhancement. *Id.* at 293-94.

We have also considered whether wobblers are felonies for purposes of other federal statutes. *See Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir. 2004) (holding that a wobbler was not an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) because the state court had imposed a sentence of imprisonment in the county jail, and thus the conviction was a misdemeanor under section 17(b)(1) of the California Penal Code); *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 845 (9th Cir. 2003) (holding that a wobbler qualified for the petty offense exception to deportation under 8 U.S.C. § 1182(a)(2)(A)(ii)(II) because the state court had declared it a misdemeanor under section 17(b)(3)); *United States v. Qualls*, 172 F.3d 1136, 1137-38 (9th Cir. 1999) (en banc) (holding that a conviction for assault with a deadly weapon under California Penal Code section 245(a) was a felony for purposes of a felon-in-possession violation under 18 U.S.C. § 922(g)(1) because it did not qualify as a misdemeanor under section 17(b)). In all of these cases, we had to determine the maximum potential penalty for the conviction at issue. To answer that question, we looked to how the state court treated the wobbler.

Unlike the prior conviction in *Robinson*, Bridgeforth's prior conviction did result in a judgment imposing a punishment. Although Bridgeforth was initially granted probation, the state court terminated that probation on December 15, 1995, and

imposed a sentence of 365 days in county jail. Upon imposition of that sentence, the wobbler became a misdemeanor "for all purposes" under section 17(b)(1). Therefore, pursuant to *Robinson*, Bridgeforth's 1995 conviction did not subject him to the career offender enhancement because it was a misdemeanor under California law.

**[9]** The government argues that *Robinson* is distinguishable, but we are not persuaded. *Robinson*'s rationale rested on an inquiry into the state court's treatment of a wobbler, and we are bound by that reasoning. To determine whether a conviction for a wobbler is an offense punishable by a term of imprisonment exceeding one year under the career offender provisions of the Guidelines, the sentencing court must look to state law: Did the California court's treatment of the offense convert it into a "misdemeanor for all purposes" under California Penal Code section 17(b)? If so, then the conviction does not qualify as an offense "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a).

**[10]** It is true that the actual sentence imposed is irrelevant to whether a crime is a felony under the career offender enhancement; the crime need only be *punishable* by a imprisonment for more than one year. *Davis*, 932 F.2d at 764. However, *Robinson* requires us to hold that a state court's subsequent treatment of a wobbler is controlling for purposes of the career offender enhancement. When the California court sentenced Bridgeforth to 365 days in county jail, section 17(b)(1) of the California Penal Code operated to convert that offense to a misdemeanor "for all purposes." We hold, therefore, that Bridgeforth's conviction for violating California Penal Code section 245(a) was not a felony conviction for a crime of violence under sections 4B1.1 and 4B1.2 of the Sentencing Guidelines, and that Bridgeforth was improperly sentenced as a career offender. Because we hold that the 1995 conviction was a misdemeanor under California Penal Code section 17(b)(1), we do not reach Bridgeforth's contention

that the conviction also qualified as a misdemeanor under section 17(b)(3). Additionally, because we vacate the sentence and remand for resentencing, we need not consider Bridgeforth's arguments under *United States v. Booker*, 543 U.S. 220 (2005).

## CONCLUSION

Because Bridgeforth's right of confrontation was not violated by the limitations placed on cross-examination or by the admission of his co-conspirator's statements, we affirm his convictions. However, because the district court improperly concluded that Bridgeforth's 1995 conviction was a felony, we vacate the sentence and remand for resentencing.

**AFFIRMED IN PART, SENTENCE VACATED, and REMANDED IN PART.**