**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny Joseph FABRICANT,**
**Defendant–Appellant.**

**No. 05–50123.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2007.

Filed Sept. 7, 2007.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Becky S. Walker, Esq., April Anita Christine, Esq., Office of the U.S. Attorney Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Danny Joseph Fabricant, Adelanto, CA, pro se.

Verna J. Wefald, Esq., Attorney at Law, Pasadena, CA, for Defendant–Appellant.

Before: KOZINSKI, KLEINFELD and TALLMAN, Circuit Judges.

### MEMORANDUM*

For cross-examination to be effective, a defendant must be allowed to adequately explore the witness's motives and biases. When dealing with an informant, a defendant is entitled to let the jury know how much the witness has to gain by testifying for the government. *United States v. Larson,* 495 F.3d 1094, 1105–06 (9th Cir.2007) (en banc). Here, defendant claims, and the government does not dispute, that Kramer faced a life sentence or the death penalty, and that his penalty was reduced to mere probation because of his cooperation. The jury was not informed of this, nor was defendant allowed to question Kramer about the details of his crime which, by their horrific nature, would have alerted the jury that the witness would suffer extremely serious consequences if he did not testify for the government. This is the same error identified in *Larson,* and it was an abuse of discretion here as it was there. *Id.* at 1107.

Kramer's testimony that defendant sold methamphetamine rather than marijuana was largely uncorroborated. The error was therefore not harmless beyond a reasonable doubt. *See id.* at 1107–08.

**REVERSED and REMANDED.**

TALLMAN, Circuit Judge, dissenting:

We recently clarified our standard of review in cases involving alleged Confrontation Clause violations. We held that where the district court bars cross-examination as to an entire area of inquiry, we apply de novo review; however, if the limitation is *within* an area of inquiry, the abuse of discretion standard applies. *Larson,* 495 F.3d at 1101. The situation in this case mirrors that in *Larson,* where we applied the abuse of discretion standard. Because the district court did not abuse its discretion when it limited cross-examination of the government's key witness, I respectfully dissent. The jury heard ample testimony implicating informant Kramer's credibility and bias in favor of the government, and I would affirm Fabricant's drug conviction, as required by our highly deferential standard of review.

"A limitation on cross examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness." *United States v. Bridgeforth,* 441 F.3d 864, 868 (9th Cir.2006) (internal quotation marks omitted). The Sixth Amendment does not

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

require the jury to hear *all* information relevant to a witness's bias and credibility; rather, a district court's decision to limit cross-examination is constitutional so long as the fact-finder hears *sufficient* information to make the necessary determination. *See United States v. Holler,* 411 F.3d 1061, 1065 (9th Cir.2005); *United States v. Beardslee,* 197 F.3d 378, 383 (9th Cir.1999).

Here, the relevant information for the jury was Kramer's motive for testifying favorably to the prosecution in light of his earlier plea bargain. On this score, the jury had plenty of testimony on which to base a reasoned credibility assessment: throughout direct and cross-examination, the jury heard that Kramer murdered someone as part of his activities in the Hells Angels; that he'd been convicted of a violent crime—murder in aid of racketeering—pursuant to his federal plea agreement; that his deal with the government was quite favorable; that he expected to receive only probation; that his statements concerning the murder would not be used against him; and that he engaged in unauthorized drug use, drug dealing, and violent fights while working as an informant for ATF. In addition, the court specifically instructed the jury that Kramer was a twice-convicted felon who had received significant compensation pursuant to plea agreements, and that they should examine his testimony with greater caution than that of other witnesses. The impeachment testimony allowed was certainly sufficient to allow the jury to assess the witness's credibility.

The majority states that our decision in *Larson* requires us to find that the district court abused its discretion. It reasons that the jury was unaware that Kramer would suffer "extremely serious consequences" if he did not cooperate with the government because the jury was not informed that Kramer could have received a life sentence or the death penalty and because the defendant was not allowed to question Kramer about the details of his crime. Our analysis in *Larson,* however, hinged solely on the certainty of the life sentence: "It is a sentence that the witness knows *with certainty* that he will receive unless he satisfies the government with substantial and meaningful cooperation so that it will move to reduce his sentence." *Id.* at 1106.

There is no such certainty in this case. Unlike the witness in *Larson,* Kramer did not need the government to file a motion for a sentence reduction to avoid a mandatory life sentence. His guilty plea for murder in aid of racketeering under the federal VICAR statute, though punishable by life sentence or death, is also punishable by fine. *See* 18 U.S.C. § 1959(a)(1); *cf. Larson,* 495 F.3d at 1106 n. 12 (distinguishing extra-circuit case law involving "the exclusion of testimony regarding the *potential* sentence that the witness faced in the absence of cooperation with the government"). Similarly, Kramer faced no certainty of a life sentence in state court following his conviction for manslaughter, a crime punishable by only five years imprisonment. *See* Ariz.Rev.Stat. § 13–701(C)(1); *cf. Larson,* 495 F.3d at 1106 n. 11 ("There is … a fundamental difference between a sentence involving 'substantial prison time' with a likelihood of release and life in prison without the possibility of release, when ensures that no matter how long a person lives, he will live out the remainder of his days behind bars."). Thus, in the event that Kramer provided inadequate assistance to the government, it would be impossible to determine exactly how much time, if any, he would spend behind bars for his involvement in the murder. This lack of certainty undercuts the need for testimony as to the details of the murder because such testimony simply could not elucidate the exact magnitude of

the benefit Kramer was set to receive in return for his cooperation.

In addition, even if Fabricant's Confrontation Clause rights were violated, the error was harmless. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Each of the charged drug transactions was recorded and later played for the jury. Fabricant admitted that he met with Kramer on each of the charged dates. He also admitted the prices and quantities of drugs he sold to Kramer. An ATF agent testified that Kramer delivered to him methamphetamine in the amounts discussed in the recordings. When law enforcement raided Fabricant's home, they found a distributable amount of methamphetamine. This evidence and testimony all corroborated Kramer's story. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (noting that factors relevant to the harmless error analysis include "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points").

We cannot tell district courts simply to permit cross-examination when the facts are "heinous" or "grisly." Instead, cross-examination should be permitted only where the topic of inquiry would reveal—with *certainty*—the benefit that *will* accrue to the witness.[1] *See Larson*, 495 F.3d at 1110 (Graber, J., concurring) ("[T]he most important piece of the puzzle is the *anticipated benefit* that [the witness] expected to receive...."). There was no such certainty here and, in light of the significant impeachment testimony, the court's decision to disallow a detailed examination of the grisly facts underlying

1. Because the majority has no idea what specific benefit Kramer will receive for his cooperation, its decision rests solely on the gory details of the murder—the exact type of de-

Kramer's convictions did not deprive the jury of an adequate opportunity to assess the witness's credibility.

I respectfully dissent.

tails that should be excluded under Federal Rule of Evidence 403.

