**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

TRAMELL D. DENTON,
  *Defendant-Appellant.*

No. 09-50253

D.C. No.
5:08-cr-00257-RT-1

OPINION

Appeal from the United States District Court
for the Central District of California
Robert J. Timlin, District Judge, Presiding

Submitted November 3, 2009*
Pasadena, California

Filed March 24, 2010

Before: Ronald M. Gould and Carlos T. Bea, Circuit Judges,
and Donald W. Molloy,** District Judge.

Opinion by Judge Bea

---

*The panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

**The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

## COUNSEL

Michael Tanaka, Deputy Federal Public Defender, FPDCA — Federal Public Defender's Office, Los Angeles, California, for the appellant.

Jayne Kim, Assistant U.S. Attorney, and Michael J. Raphael, Assistant U.S. Attorney, Office of the U.S Attorney, Los Angeles, California, for the appellee.

## OPINION

BEA, Circuit Judge:

Tramell Denton appeals a federal district court order revoking his supervised release and sentencing him to nine months in prison. The district court found Denton physically abused his girlfriend while he was on supervised release from a prior

conviction. Although the state authorities did not charge[1] Denton with domestic abuse, the district court found that Denton's conduct could have been charged under California Penal Code section 273.5. A violation of that section is punishable as either a felony or a misdemeanor; it is known as a "wobbler," or "alternative felony/misdemeanor," under California law. The district court held Denton's conduct was a Grade A violation under the Sentencing Guidelines because wobbler offenses are presumptively considered felonies, punishable by more than one year in prison.[2]

In this case, we must decide whether a defendant's uncharged conduct, which would be chargeable as a wobbler offense—an offense that may be charged as either a misdemeanor or a felony—is presumptively a felony, punishable by more than one year in prison, for the purposes of calculating whether the defendant committed a Grade A, B, or C violation of his supervised release. We hold that the presumption that

---

[1]"Charge," as used here, means to commence criminal proceedings in court, by Complaint or Information, following the return of an Indictment or a Preliminary Hearing holding order.

[2]United States Sentencing Guidelines section 7B1.1 states:

(a) There are three grades of probation and supervised release violations:

(1) Grade A Violations—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2) Grade B Violations—conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3) Grade C Violations—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

a charged offense under a wobbler statute is a felony does not apply to *uncharged* conduct. We reverse and remand to the district court to exercise its discretion in deciding whether the defendant's conduct was felonious.

## Factual Background

In 1994, the United States District Court for the Southern District of Mississippi convicted Denton of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1). The district court sentenced Denton to 160 months' imprisonment and imposed a five-year term of supervised release. The conditions of Denton's supervised release required Denton to refrain from drug use and to refrain from committing another federal, state, or local crime while on supervised release. Denton began serving his supervised release in June 2005.

In November 2008, the Rialto Police Department filed a police report which related that Denton had physically abused his live-in girlfriend. According to the police report, Denton slapped his girlfriend across the face, choked her, and dragged her by her hair. California state police arrested Denton two days later, but the State of California, for whatever reasons, ultimately declined to charge him with domestic violence under California Penal Code section 273.5.[3]

The next month, the United States Probation Office for the Central District of California ("USPO") filed a Petition on Probation and Supervised Release (the "Petition") in district

---

[3]California Penal Code section 273.5 states, in relevant part: "Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment."

court. The Petition alleged Denton violated the terms of his supervised release because Denton had (1) tested positive five times for marijuana use; (2) "inflicted corporal injury on a cohabitant," in violation of California Penal Code section 273.5; and (3) failed to notify the USPO that the California state police had arrested him for physically abusing his live-in girlfriend in November 2008.

The district court held a hearing, where Denton admitted he had tested positive three times for marijuana use, and admitted he had failed to notify the USPO of his November 2008 arrest. However, Denton denied he had physically abused his live-in girlfriend, and denied the other two allegations of marijuana use.

The court held a further hearing, and the government moved to dismiss the marijuana allegations that Denton disputed, but declined to dismiss the domestic violence allegation. The government introduced into evidence a police report that related Denton's assault on his girlfriend in November 2008. Denton declined to object to the police report or to contest the facts stated in the report.[4]

The district court found Denton violated the terms of his supervised release. Specifically, the court found by a preponderance of the evidence that Denton inflicted corporal injury on a cohabitant, in violation of California Penal Code section 273.5.[5]

---

[4]At the hearing, Denton's counsel stated Denton would not admit to the domestic violence offense, but would not contest the facts of the incident as related in the police report. The defense attorney explained that if Denton admitted he had physically abused his girlfriend, state prosecutors could still formally charge Denton with domestic violence because the statute of limitations on that charge had not yet run. Nonetheless, according to his counsel, Denton's "intention [was] not to contest" the domestic violence allegation.

[5]The court also found Denton used marijuana three times during his supervised release and Denton failed to notify the USPO of his arrest.

The district court found that, because a domestic abuse offense is punishable by up to four years' imprisonment, the domestic abuse offense is a Grade A violation of Denton's supervised release.[6] The court then calculated Denton's sentencing range under the Guidelines as 24-30 months' imprisonment for violating his supervised release, based in part on the court's finding that Denton committed a Grade A violation.[7] After reviewing the 28 U.S.C. § 3553(a) sentencing factors, the court departed downward and sentenced Denton to nine months' imprisonment.[8] Denton timely appealed.

## Standard of Review

This court reviews de novo claims of error in a district court's order interpreting the Sentencing Guidelines and reviews for abuse of discretion the district court's application of the Guidelines to the facts of a case. *United States v. Marler*, 527 F.3d 874, 876-77 (9th Cir. 2008).

## Analysis

Denton does not appeal the district court's holding that he violated the terms of his supervised release by physically abusing his live-in girlfriend. He appeals only the district court's characterization of his offense as a Grade A violation of his supervised release.

---

[6]The district court also found Denton's marijuana use and failure to notify the USPO of his arrest were Grade C violations.

[7]The parties agree that if the district court had found the domestic violence offense was a Grade C violation of Denton's supervised release, the correct Guidelines sentencing range would have been three-to-nine months' imprisonment.

[8]In departing downward, the district court cited in support: Denton's age, his prior employment, his financial support for his daughter, his support and care for his mother, his willingness to engage in anger management, and his willingness to work with the USPO to overcome his drug problems.

**[1]** Courts may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release "if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). In determining whether a defendant violated the conditions of his supervised release, a court may consider the defendant's commission of a crime even if the government ultimately did not prosecute the defendant for that crime. U.S.S.G. § 7B1.1, cmt. 1; *United States v. Jolibois*, 294 F.3d 1110, 1114 (9th Cir. 2002) ("A [supervised release] violation . . . may be found whether [the defendant] was ever indicted or convicted of [the] particular offense.").

When sentencing a defendant for violating the conditions of his supervised release, a court must determine the applicable advisory sentencing range under the Guidelines. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) ("All sentencing proceedings are to begin by determining the applicable Guidelines range."). A failure to calculate the correct advisory range constitutes procedural error. *Id.* at 993. We reverse sentence determinations when a district court has committed a significant procedural error. *Id.*

**[2]** To calculate the correct Guidelines sentencing range for a violation of a defendant's supervised release, the sentencing court must determine whether the violation is a Grade A, Grade B, or Grade C violation.[9] U.S.S.G. § 7B1.1. The relevant portion of the Sentencing Guidelines defines a Grade A violation as conduct constituting "a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence." U.S.S.G. § 7B1.1(a)(1). The relevant portion of the Sentencing Guidelines defines a Grade C violation as conduct constituting "a federal, state, or

---

[9]Neither party contends the domestic violence offense at issue is a Grade B violation. Thus, we will discuss Grade A and Grade C violations only.

local offense punishable by a term of imprisonment of one year or less." U.S.S.G. § 7B1.1(a)(3).

**[3]** Whether a defendant has committed a Grade A or Grade C violation of his supervised release depends on the potential punishment for the underlying offense. *See Jolibois*, 294 F.3d at 1112. Under California law, a person who commits a domestic violence offense "is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three or four years, or in a county jail for not more than one year." Cal. Penal Code § 273.5. Although the California Penal Code refers to domestic abuse as a felony, under the Guidelines, it may be either a Grade A violation or a Grade C violation depending on the length of the defendant's sentence. *See, e.g.*, *United States v. Bridgeforth*, 441 F.3d 864, 871-72 (9th Cir. 2006). As the Supreme Court has held in another context, the California domestic abuse statute is a "wobbler," in which an offense under the statute can be punished either as a felony or as a misdemeanor. *See Ewing v. California*, 538 U.S. 11, 16 (2003) (interpreting California law).

**[4]** Under California law, a "wobbler" statute "is presumptively a felony and 'remains a felony except when the discretion is actually exercised' to make the crime a misdemeanor." *Id.* at 16 (quoting *People v. Williams*, 27 Cal. 2d 220, 229 (1945)). This Circuit has not decided whether this "wobbler presumption" applies to uncharged conduct. We observe that California courts have stated the wobbler presumption applies to charged conduct. *See, e.g.*, *People v. Mincey*, 2 Cal. 4th 408, 453 (1998) (holding the felony statute of limitations applies to a wobbler offense initially charged as felony, without regard to the ultimate reduction to a misdemeanor); *People v. McElroy*, 126 Cal. App. 4th 874, 880 (2005) ("A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment."). We have not found any authority, state or federal, holding the wobbler presumption applies to uncharged conduct.

**[5]** We hold that when a district court finds that a defendant has committed a wobbler offense, but the offense is uncharged, no presumption applies as to whether the offense is punishable as a felony (more than one year's imprisonment) or a misdemeanor (less than one year's imprisonment).[10] Because no presumption applies, the district court must exercise its discretion to decide whether the offense was punishable by more than one year's imprisonment.

**[6]** To decide whether an offense was punishable by more than one year's imprisonment, the court should determine first whether, assuming the offense had been charged, a California prosecutor would have charged the offense as a misdemeanor or a felony. If the district court finds a prosecutor would have charged the offense as a felony, the district court must determine, second, whether a trial court would have "impose[d] a punishment other than imprisonment in a state prison," under the process set forth in California Penal Code section 17(b). For the purpose of this inquiry, the district court should follow the factors identified in *People v. Superior Court (Alvarez)*, 14 Cal. 4th 968, 978 (1997): "[T]he nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial . . . [and] the general objectives of sentencing."[11]

---

[10]As a note of caution, we do not hold that uncharged offenses are presumptively misdemeanors. When an offense is uncharged, no presumption applies.

[11]In *Alvarez*, the police discovered methamphetamine and drug paraphernalia during a consensual search of Alvarez's bag. 14 Cal. 4th at 973. The prosecution charged Alvarez with a felony violation of California Health and Safety Code section 11377, subdivision (a). *Id.* The complaint charged Alvarez with four prior serious felony convictions. *Id.* During the trial, he moved to have the instant charge declared a misdemeanor, which the trial court took on submission and granted after the jury returned a guilty verdict. *Id.* at 973-74. On a petition for a writ, the Court of Appeal held the trial court abused its discretion by failing sufficiently to take into account Alvarez's criminal past and for substituting its views for the Legislature's three-strikes policy. *Id.* The California Supreme Court reversed the Court of Appeal's decision, holding that California's three strikes law did not modify trial courts' discretion to reduce a wobbler offense from a felony to a misdemeanor.

**[7]** To aid the district court, the parties should submit evidence, such as affidavits from prosecutors and defense attorneys in the relevant jurisdiction, as to whether the defendant's offense was more similar to offenses charged and sentenced as felonies, or, whether the defendant's offense was more similar to offenses charged or sentenced as misdemeanors, as well as any other conduct, characteristics, or circumstances that might have affected a prosecutor's decision about how to charge Denton or a court's decision about how to exercise its discretion under California Penal Code section 17(b).[12] The district court should evaluate the parties's evidence and decide the appropriate Grade of the sentencing violation based on a preponderance of the evidence.

Our holding is consistent with the commentary to the Sentencing Guidelines, which urges courts to determine the grade of a defendant's violation based on the defendant's actual conduct. U.S.S.G. § 7B1.1, cmt. 1 ("The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be

---

[12]Here, there were aspects of Denton's conduct on both sides of the issue whether a prosecutor would have charged him with a felony or misdemeanor, and how severely a court would have sentenced him. On the one hand, the district court had before it evidence of the assault against the victim. The described abuse was violent: "Denton straddled the victim and began to choke her by squeezing her neck with both hands . . . Denton then slapped the victim across her face. Denton then began to choke her again . . . Denton pulled the victim into the living room by her hair." Denton then released his live-in girlfriend and "walked outside and began to beat and kick his dog." Although Denton's live-in girlfriend did not seek medical attention, the abuse resulted in a "traumatic condition," a bruise on her leg. On the other hand, there were considerations in Denton's favor: He cared for his aged mother, paid child support for his daughter, held down a job for much of the time, had made progress on his drug usage problem, and in general garnered more support than fear from his live-in girlfriend who was the victim of his prior abuse. These circumstances in total might have invited a decision in either direction and deserve the district court's exercise of a sound discretion.

based on the defendant's actual conduct."). A district court should evaluate the seriousness of the defendant's uncharged conduct to decide whether that conduct would be punishable by more than one year's imprisonment.

**[8]** Furthermore, a defendant charged under a wobbler statute has several opportunities to challenge the characterization of his offense as a felony. *See* Cal. Penal Code § 17(b). The defendant may convince the prosecutor to charge the offense as a misdemeanor, or the defendant may convince the court to either impose a punishment other than imprisonment in a state prison, such as "diversion," or grant probation to the defendant without imposing a sentence and declare the offense a misdemeanor. *Id.* Under California law, trial courts have longstanding authority to reduce an offense from a felony to a misdemeanor for a wobbler, without having to overcome a presumption that an offense is a felony. *See People v. Perez*, 38 Cal. App. 4th 347, 363 (1995). When a defendant's conduct is not charged, however, the defendant's first opportunity to convince a court that his offense is merely a misdemeanor is at his revocation hearing. The defendant should not be subject to a higher standard for proving his offense was a misdemeanor than the defendant would have to meet before a state trial court if his conduct was actually prosecuted.

Finally, the Government's reliance on *United States v. Bridgeforth*, 441 F.3d 864 (9th Cir. 2006), and *United States v. Robinson*, 967 F.2d 287 (9th Cir. 1992), is misplaced because neither case involved *uncharged* conduct. In *Robinson*, the state sentencing court suspended imposition of the defendant's sentence and placed the defendant on probation with nine months in county jail. 967 F.2d at 292. In *Bridgeforth*, the defendant was convicted and sentenced to 365 days in county jail. 441 F.3d at 867. The Government has not raised any authority regarding uncharged conduct.

**[9]** Accordingly, the district court committed a significant procedural error. *United States v. Hammons*, 558 F.3d 1100,

1106 (9th Cir. 2009) (holding that a court that calculates incorrectly the Guidelines range commits reversible error even if the actual sentence is within the correct Guidelines range). The district court did not exercise its discretion to determine whether Denton's uncharged offense was punishable by more or less than one year. The district court instead applied a presumption that the uncharged offense was a felony and therefore a Grade A violation.

**[10]** Although we use the term "significant procedural error," we hasten to add that the district court did nothing unreasonable. To the contrary, the district court seems prescient of our opinion and departed downward from the Guidelines' range to issue a sentence within the range that would apply if the district court determined that Denton's offense was a Grade C violation. We remand only because the record suggests the district court felt compelled to consider Denton's offense a Grade A violation. Instead, on remand, the district court should exercise its discretion to decide whether Denton's conduct constituted an offense punishable by more than one year, in which case the offense is a Grade A violation, or one year or less, in which case the offense is a Grade C violation.

**REVERSED AND REMANDED.**