FILED
                                                  United States Court of Appeals
                                                          Tenth Circuit
                UNITED STATES COURT OF APPEALS
                                                       **February 12, 2014**
                         TENTH CIRCUIT
                                                   **Elisabeth A. Shumaker**
                                                       **Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.                                                    No. 13-2083
                                                 (D.C. No. 2:06-CR-00615-WJ)
MARTIN SAAVEDRA–VILLASENOR,                              (D.N.M.)

     Defendant - Appellant.


                        ORDER AND JUDGMENT[*]


Before **TYMKOVICH, HOLLOWAY,** and **MATHESON,** Circuit Judges.


     When he illegally reentered the United States after completing a prison term in

this country and then being deported to Mexico, Martin Saavedra–Villasenor violated a

condition of his supervised release: that he not commit any more crimes. And Mr.

Saavedra[1] did not deny that he had committed a federal crime by returning to the United

---

    [*] After examining the briefs and appellate record, this panel has decided unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [1] We follow Mr. Saavedra's lead in referring to him as Mr. Saavedra, rather than as Mr. Saavedra–Villasenor.

States without authorization—namely, a violation of 8 U.S.C. § 1325, which prohibits improper entry by an alien. He pleaded guilty to the charges of illegal entry and admitted that he had violated the conditions of his supervised release.

At a hearing on the revocation of his supervised release, the district court classified Mr. Saavedra's illegal reentry as a Grade B, rather than a Grade C, supervised-release violation under the United States Sentencing Guidelines. In brief, this classification meant that Mr. Saavedra would face a longer advisory sentencing range for his supervised-release violation. Applying the Sentencing Guidelines, the district court sentenced him to twenty-one months in prison. Mr. Saavedra now challenges his sentence on appeal, arguing that the district court wrongly placed his supervised-release violation in the more stringent Grade B category for sentencing purposes.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's judgment.

## I. BACKGROUND

Mr. Saavedra, an alien and Mexican national, has spent a great deal of time in the United States. For much of that time, he has also been in trouble with the law. The trouble in this case began in 2006, when Mr. Saavedra pleaded guilty in federal district court in New Mexico to illegally reentering the United States after being previously deported, in violation of 8 U.S.C. § 1326(a)(1) and (2). Because he had a prior aggravated-felony conviction for domestic battery on his record, Mr. Saavedra's advisory sentencing range under the Sentencing Guidelines was fairly high: between seventy-seven and ninety-six months. The federal district court in New Mexico sentenced him to

a term of imprisonment at the low end of the advisory range—seventy-seven months—to be followed by a three-year period of supervised release.[2]

Mr. Saavedra's term of supervised release began on July 18, 2011, when he was released from prison and deported to Mexico. That same day, Mr. Saavedra illegally reentered the United States, and he did so again on December 28, 2011. In July 2012, Mr. Saavedra was charged with a two-count violation of 8 U.S.C. § 1325 in the United States District Court for the Southern District of California. He pleaded guilty, and the federal district court in California sentenced him to six months in prison on the first count, along with a special penalty assessment of ten dollars, and to one year in prison on the second count, along with a special penalty assessment of one hundred dollars. The district court ordered the sentences to run concurrently. Mr. Saavedra was then transferred to New Mexico, where the federal district court conducted a hearing on the government's petition to revoke the supervised release imposed following his 2006 conviction. Because Mr. Saavedra did not contest the fact that he had violated the

---

[2] In 2007, Mr. Saavedra filed a petition for writ of habeas corpus under 28 U.S.C. § 2255. In the petition, he asserted that his prior conviction for domestic battery was not an aggravated felony and that his counsel had therefore been ineffective in not investigating the past conviction or objecting to its classification. The district court denied Mr. Saavedra's petition. After thoroughly considering his claims, we denied Mr. Saavedra's request for a certificate of appealability and dismissed his appeal in *United States v. Saavedra–Villasenor*, 316 F. App'x 718 (10th Cir. 2008). We further denied him authorization to file a second, successive § 2255 motion in *In re Saavedra–Villasenor*, No. 09-2287 (10th Cir. Dec. 11, 2009). Mr. Saavedra's 2006 conviction and sentence are not at issue in this appeal, and it is undisputed that he was subject to prosecution for a supervised-release violation when he illegally reentered the country in 2011.

conditions of his supervised release, the only question before the district court was what the punishment should be for the admitted violation.

At the hearing, the government asserted that Mr. Saavedra's supervised-release offense should be classified as a Grade B violation under § 7B1.1 of the Sentencing Guidelines. Mr. Saavedra disagreed, arguing that his offense was instead a Grade C violation—a less serious category. The distinction is an important one because it affects the length of the advisory sentencing range for a supervised-release violation. Under the Sentencing Guidelines, a Grade B violation consists of "conduct constituting any . . . federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2). A Grade C violation, on the other hand, is one that involves "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment of one year or less." *Id.* § 7B1.1(a)(3).

Agreeing with the government, the district court found that Mr. Saavedra's offense was a Grade B violation because his actual conduct in illegally reentering the country was punishable by a term of imprisonment exceeding one year under the charging statute, 8 U.S.C. § 1325. A finding of a Grade B supervised-release violation, coupled with a criminal-history category of VI at the time of Mr. Saavedra's original sentencing in 2006, resulted in an advisory sentencing range of twenty-one to twenty-seven months. Accordingly, the district court sentenced Mr. Saavedra to twenty-one months in prison for violating the terms of his supervised release and ordered that his sentence be served consecutive to his one-year sentence from California. Mr. Saavedra now appeals, asking us to vacate his sentence and remand the case to the district court for resentencing.

-4-

On appeal, Mr. Saavedra challenges only the district court's characterization of his offense as a Grade B supervised-release violation, instead of as a Grade C violation, under § 7B1.1 of the Sentencing Guidelines. He argues that, as a result of this allegedly erroneous classification, the district court incorrectly calculated the length of his sentence.

This appeal requires us to review the district court's interpretation of the Sentencing Guidelines and its application of the Sentencing Guidelines to the facts of Mr. Saavedra's case. "When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions *de novo* and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Munoz–Tello*, 531 F.3d 1174, 1181 (10th Cir. 2008) (internal quotation marks omitted). Our interpretation of the Sentencing Guidelines proceeds "according to accepted rules of statutory construction." *United States v. Nacchio*, 573 F.3d 1062, 1066 (10th Cir. 2009). We begin by

> look[ing] at the language in the guideline itself, as well as at the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission. [C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.

*United States v. Robertson*, 350 F.3d 1109, 1112-13 (10th Cir. 2003) (alteration in original) (citations and internal quotation marks omitted). Furthermore, "Guidelines commentary is 'treated as an agency's interpretation of its own legislative rule,' i.e., 'it

must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Nacchio*, 573 F.3d at 1067 (quoting *Stinson v. United States*, 508 U.S. 36, 44-45 (1993) (internal quotation marks omitted)).

Under the terms of 18 U.S.C. § 3583(d), a mandatory condition of supervised release is "that the defendant not commit another Federal, State, or local crime during the term of supervision." A court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *Id.* § 3583(e)(3).

The Sentencing Guidelines create three grades of supervised-release violations: Grade A, Grade B, and Grade C.[3] *See* U.S.S.G. § 7B1.1(a)(1)-(3). As noted above, the Sentencing Guidelines describe a Grade B violation as "conduct constituting any . . . federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* § 7B1.1(a)(2). For its part, a Grade C violation—the least serious category of offense—consists of "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment of one year or less." *Id.* § 7B1.1(a)(3). Unquestionably, Mr. Saavedra violated the terms of his supervised release when he committed a federal crime: improper entry or reentry by an alien into the United States, in violation of 8 U.S.C. § 1325. Relying on the definitions found in U.S.S.G. § 7B1.1, the district court classified Mr. Saavedra's offense as a Grade B supervised-release violation. We agree.

---

[3] Neither party argues that Mr. Saavedra's offense is a Grade A violation. Accordingly, we limit our discussion to Grade B and Grade C violations only.

Mr. Saavedra was charged under, and pleaded guilty to violating, the terms of 8 U.S.C. § 1325. Following the entry of his guilty plea, the federal district court in California sentenced him to one year of imprisonment. It is the precise length of that sentence—exactly one year—that has created the problem in this case. Mr. Saavedra says his offense should properly have been grouped into the Grade C category. After all, he was sentenced to one year in prison for violating the illegal-entry statute, and the Grade C classification embraces "conduct . . . punishable by a term of imprisonment of one year or less." U.S.S.G. § 7B1.1(a)(3).

Mr. Saavedra first asserts that the classification of his supervised-release violation must be determined by looking to the actual conduct that gave rise to the violation. He then argues that the scope of this illegal conduct, in turn, can be judged only in light of the actual sentence eventually imposed for the offense. In support of this argument, Mr. Saavedra points to the first application note accompanying U.S.S.G. § 7B1.1, which instructs that "the grade of the [supervised-release] violation is to be based on the defendant's actual conduct." *Id.* § 7B1.1 cmt. 1. Here, he contends that because his "actual conduct"—the violation of 8 U.S.C. § 1325—ended up being punished by a sentence of only one year, then his supervised-release violation must therefore fall squarely within the Grade C category.

To be sure, Mr. Saavedra's argument has some surface appeal: His illegal conduct landed him a one-year sentence, and a Grade C violation is one that is punishable by one year or less of imprisonment. But this argument hinges on a misreading of U.S.S.G. § 7B1.1. This is because the actual sentence imposed on a defendant for committing the

-7-

underlying offense is not the proper measure for classifying that offense as either a Grade B or Grade C violation under the Sentencing Guidelines. Rather, the relevant consideration is how the actual conduct giving rise to the violation is *punishable* under applicable law.

How an offense is punishable under a statute, and how that offense is ultimately punished upon conviction (if at all), may, of course, be two very different things. No doubt cognizant of this distinction, the drafters of the Sentencing Guidelines have plainly defined a Grade B violation as "conduct . . . *punishable* by a term of imprisonment exceeding one year." *Id.* § 7B1.1(a)(2) (emphasis added). In that same vein, a Grade C violation is defined as "conduct . . . *punishable* by a term of imprisonment of one year or less." *Id.* § 7B1.1(a)(3) (emphasis added). We have previously held that the word "punishable" encompasses the full scope of punishment possible for an offense, "irrespective of the actual sentence imposed." *United States v. Hernandez–Garduno*, 460 F.3d 1287, 1293 (10th Cir. 2006); *see also United States v. Hernandez–Castillo*, 449 F.3d 1127, 1130-31 (10th Cir. 2006) (holding that a defendant who was given a 157-day suspended sentence by a California state court had nevertheless been convicted of an offense punishable by more than one year's imprisonment because California law made the offense at issue "punishable" by up to three years' imprisonment); *Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013) (emphasizing "the commonsense meaning of the term 'punishable,' which refers to any punishment capable of being imposed"); *United States v. Denton*, 611 F.3d 646, 651 (9th Cir. 2010) ("Whether a defendant has

-8-

committed a Grade A or Grade C violation of his supervised release depends on the potential punishment for the underlying offense.").

The underlying offense to which Mr. Saavedra pleaded guilty was a violation of 8 U.S.C. § 1325, which prohibits the unauthorized entry or reentry of an alien into the United States. Mr. Saavedra had previously been deported from this country, and his subsequent reentries were not authorized. As punishment for such repeat violations, the statute prescribes a term of imprisonment of "not more than 2 years." 8 U.S.C. § 1325(a). Under the plain terms of the charging statute, Mr. Saavedra's offense was punishable by a term of imprisonment exceeding one year, thus making it a Grade B violation under the Sentencing Guidelines.[4]

This understanding of what the Sentencing Guidelines mean by "punishable" conduct is bulwarked by the text of the first application note to U.S.S.G. § 7B1.1, which makes clear that a supervised-release violation

> may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding.

*Id.* § 7B1.1 cmt. 1. That is to say, the fact that a defendant may never be prosecuted for committing a new crime in no way lessens his culpability for breaking the conditions of

---

[4] The government also points out that the federal district court in California assessed a $100 special penalty against Mr. Saavedra. A penalty in that amount is appropriate only in the case of a felony. *See* 18 U.S.C. § 3013(a)(2)(A). In addition, the government correctly notes that Mr. Saavedra's conduct was also chargeable under 8 U.S.C. § 1326, which makes the reentry of an alien "whose removal was subsequent to a conviction for commission of an aggravated felony"—as was Mr. Saavedra—punishable by up to twenty years' imprisonment. 8 U.S.C. § 1326(b)(2).

supervised release. In such cases, any classification of the supervised-release violation will, of necessity, be guided by reference to the potential punishment capable of being imposed for the underlying offense—in other words, by how the conduct is punishable. In short, "the grade of the violation is to be based on the defendant's actual conduct"— not the actual sentence that may or may not ever be imposed as direct punishment for that unlawful conduct. *Id.*

As a final argument, Mr. Saavedra asserts that any ambiguity in U.S.S.G. § 7B1.1 should be resolved in his favor under the rule of lenity. But this rule comes into play only after a criminal defendant "has established that the guidelines are ambiguous." *United States v. Boyd*, 721 F.3d 1259, 1263 (10th Cir. 2013). Mr. Saavedra has failed to carry that burden in this case. We hold that the district court did not err in classifying Mr. Saavedra's illegal conduct as a Grade B supervised-release violation under the Sentencing Guidelines.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge

-10-