PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

D. MARK PENTRACK,

        Defendant-Appellant.

No. 04-4143

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 03-CR-919-DB)**

---

Steven B. Killpack, Federal Public Defender and Scott Keith Wilson, Assistant Federal Public Defender, Office of the Federal Public Defender, Salt Lake City, Utah, for Defendant-Appellant.

Paul M. Warner, United States Attorney, Elizabethanne C. Stevens, Assistant United States Attorney, Office of the United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **McCONNELL** , **HOLLOWAY** , and **TYMKOVICH,** Circuit Judges. *

---

    * After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

**TYMKOVICH** , Circuit Judge.

Defendant-Appellant D. Mark Pentrack appeals the sentence imposed for his role in an internet fraud scam. He argues (1) the district court improperly enhanced his sentence by relying on an Idaho consent judgment against him, which was not "specific" within the meaning of the United States Sentencing Guidelines , § 2B1.1(b)(7)(C) (Nov. 2003); and (2) his sentence was imposed in violation of *United States v. Booker* , 125 S. Ct. 738 (2005).

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because we hold that the Idaho injunction is sufficiently specific within the meaning of § 2B1.1(b)(7)(C), and the district court did not commit plain error under *Booker* , we affirm Pentrack's conviction.

## I. Background

In March 2004, Pentrack pled guilty to a variety of federal crimes[1] arising from his participation in an internet fraud scheme in which he purported to sell auto and aircraft parts he did not own. At sentencing, the district court learned Pentrack had previously been subject to a fraud investigation in 1996 by the Idaho attorney general. In the Idaho matter, Pentrack contacted consumers who had

---

[1] Pentrack pled guilty to four separate counts: 18 U.S.C. § 1341 (mail fraud), 42 U.S.C. § 408(a)(7)(B) (misuse of social security number), 18 U.S.C. § 1512(c) (destruction of evidence), and 18 U.S.C. § 1001 (false statements to the government).

placed advertisements in collector's magazines. Falsely representing he owned the desired items, Pentrack would collect the victim's money, but provide nothing in return. He entered into a consent judgment and stipulation to settle the charges.

In the Idaho judgment, Pentrack stipulated that he had engaged in acts and practices in violation of Idaho consumer protection laws that were "false, deceptive, or misleading and [had] the capacity, tendency, or effect of misleading a consumer acting reasonably under the circumstances." Reply at 8. As a result of this stipulation, an Idaho court permanently enjoined Pentrack from (1) "making false, deceptive or misleading statements, or engaging in acts or practices that have the capacity, tendency, or effect of misleading consumers acting reasonably under the circumstances;" (2) "misrepresenting his status, qualifications, or capabilities;" and (3) "failing to deliver within a reasonable time, goods or services following a specified delivery or performance date or within a reasonable time following receipt of payment." *Id.*

In sentencing Pentrack, the district court found his most recent internet scheme violated the terms of the Idaho consent judgment. The court consequently increased his sentence pursuant to USSG § 2B1.1(b)(7)(C), which requires an enhancement for the violation of a prior, specific court order. Applying the Guidelines, the district court calculated his offense level at 26, and his criminal

history category at VI, resulting in a Guidelines' range of 120–150 months. The district court sentenced Pentrack to a term of 135 months, commenting that "[a]nyone who suggests at the present time in the federal system that so-called white-collar frauds are not being harshly dealt with can point to this case." R. vol. 3 at 52.

## II. Analysis

### *A. Violation of a Prior, Specific Judicial Order*

We first consider Pentrack's argument that the district court erroneously imposed USSG § 2B1.1(b)(7)(C). While we review legal questions regarding the application of the Sentencing Guidelines de novo, a district court's factual findings are reviewed only for clear error, giving due deference to the district court's application of the Guidelines to the facts. *United States v. Tsosie*, 376 F.3d 1210, 1217–18 (10th Cir. 2004) (internal citations omitted).

We begin with the legal question. Section 2B1.1(b)(7)(C) required pre-*Booker* a district court to increase a defendant's offense level if the convicted offense involved "a violation of any *prior, specific* judicial or administrative order, *injunction*, decree, or process not addressed elsewhere in the guidelines." (emphasis added). Pentrack argues that the Idaho injunction was not "specific"

within the meaning of this provision since it merely obligated him to do what he had always been required to do, namely obey the law of the State of Idaho.[2]

In analyzing this claim, we start with the term "specific" as used in § 2B1.1(b)(7)(C). We interpret the Sentencing Guidelines by following ordinary rules of statutory construction. *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003). First, we look to the language of the Guideline, respectful of the accompanying commentary provided by the Sentencing Commission. *Id.* According to Black's Law Dictionary (8th Ed. 2004), "specific" is defined as "[o]f, relating to, or designating a particular or defined thing; explicit." Consequently, since the term "specific" modifies the term "injunction," the injunction must be explicit. However, this explanation provides us with little insight into exactly how the injunction must satisfy this definition, so we turn next to the Commentary provided by the Commission .

The Sentencing Commission added the phrase "prior, specific" to the Guidelines provision in 2000. Before 2000, a defendant's offense level was enhanced if it involved a "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." USSG

_____

[2] Pentrack claims the portion of the injunction precluding him from "making false, deceptive or misleading statements" simply reiterates the common law doctrine of fraud, which all persons are required to obey. Similarly, he argues that the provision he "deliver within a reasonable time, goods or services following a specified delivery or performance date or within a reasonable time following receipt of payment" does no more than restate basic contract law.

§ 2F1.1(b)(4)(B) (Nov. 1999). The broad language of this provision led to a circuit split regarding the provision's application in cases of bankruptcy fraud, with the majority of circuits holding that a defendant who conceals assets during the course of a bankruptcy proceeding is subject to a sentence enhancement. *Compare United States v. Saacks,* 131 F.3d 540 (5th Cir. 1997) (holding that a debtor who conceals assets during the course of a bankruptcy proceeding is subject to conviction for bankruptcy fraud as well as a sentence enhancement for violation of a judicial order or process), *and United States v. Messner*, 107 F.3d 1448 (10th Cir. 1997) (same), *with United States v. Shadduck*, 112 F.3d 523, 530 (1st Cir. 1997) (holding that a debtor who conceals assets during the course of a bankruptcy proceeding, while subject to conviction for bankruptcy fraud, is not subject to a sentence enhancement for violation of a judicial order). These courts reasoned that "even when the fraudulent debtor takes the very first act by filing his petition in bankruptcy, he is acting subsequently to the previously adopted . . . standing orders and standard forms," thus rejecting the contention that the enhancement applies only if the defendant violated a pre-existing, particular order. *Saacks*, 131 F.3d at 546.

The Sentencing Commission resolved this split by adding the phrase "prior, specific" to the existing provision and creating a new category for "misrepresentation or other fraudulent action during the course of a bankruptcy

proceeding." USSG App. C. amend. 597; *see id.* § 2F1.1(4)(B)–(C) (Nov. 2000).

The Commission explained the modification as follows:

> [The modification and accompanying commentary] make[s] clear that, in order for the enhancement to apply in a fraud case not involving a bankruptcy proceeding, there must be a false statement in violation of a specific, prior order. Therefore, any case involving a bankruptcy fraud will result in a two-level enhancement, but in the case of a non-bankruptcy fraud, the enhancement will apply only if a defendant was given *prior notice of a particular action*.

*Id.* App. C amend. 597 (emphasis added).

As the Commission explains, "prior" refers to notice and "specific" or "particular" refers to the action or conduct of the defendant. Thus, as the Commission notes, this language "provides an enhancement if the defendant commits a fraud in contravention of a *prior*, *official judicial or administrative warning*, in the form of an order, injunction, decree, or process, to take or not to take a *specified action*." *Id.* § 2B1.1 comment. ( n. 6(C)) (emphasis added). The additional phrasing, then, merely clarifies the distinction between enhancements for bankruptcy and non-bankruptcy fraud, effectively leaving unaltered the application of the enhancement in non-bankruptcy proceedings. *See United States v. Howard*, 350 F.3d 125, 126 (D.C. Cir. 2003) (noting that this change "appears not to affect the section's substance").

Nevertheless, Pentrack argues we should interpret the modifier "specific" in relation to the requirements of Federal Rule of Civil Procedure 65(d). Pursuant

to this rule, "Every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). We have interpreted the rule to

> require[] that an injunction be reasonably specific in identifying what acts are prohibited or required, both to *give notice* to the defendant of what is prohibited, and to *guide an appellate court* in reviewing the defendant's compliance or noncompliance with the injunction. An injunction too vague to be understood violates the rule and, generally, injunctions simply requiring the defendant to obey the law are too vague.

*Keyes v. Sch. Dist. No. 1*, 895 F.2d 659, 668 (10th Cir. 1990) (internal citations and quotations omitted) (emphasis added). However, Rule 65 and our cases construing it stand for the unremarkable proposition that an injunction must describe the prohibited conduct with reasonable specificity. In this sense, Pentrack's legal argument merely reiterates the Commission's explanation: the court may apply § 2B1.1(b)(7)(C) only if the injunction is specific enough to provide the defendant with adequate notice of the prohibited conduct.

Turning to the factual background here, we cannot agree with Pentrack that the Idaho injunction lacks specificity within the plain meaning of § 2B1.1(b)(7)(C). The consent judgment by its terms (1) prohibits three types of *specified conduct* in line with Pentrack's prior frauds and (2) provides Pentrack with *prior adequate notice* of the type of conduct prohibited. Because the order

-8-

was designed to prohibit prior misconduct of the very same nature as his federal crimes (deception of consumers) and gives specific notice as to prohibited conduct, it satisfies the requirements of § 2B1.1(b)(7)(C).[3]

Accordingly, the district court properly applied the enhancement to increase Pentrack's sentence.

### B. Booker Error

Pentrack next argues that the district court violated *United States v. Booker* by applying the Sentencing Guidelines in a mandatory fashion. We recognize two types of *Booker* errors: constitutional and non-constitutional. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005). A constitutional *Booker* error may arise when a court "[relies] upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id.* A non-constitutional error may occur when a sentencing court "appl[ies] the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the

---

[3] We reject Pentrack's argument that the Idaho consent judgment is no more specific than the injunction found indefinite in *Keyes*, which simply mandated "compl[iance] with the constitutional requirement of equal education opportunity for all who are entitled to the benefits of public education in Denver, Colorado." 895 F.2d at 669 n.5. The injunction here is adequately specific; Pentrack can hardly complain that he did not know what past conduct was being enjoined or what future conduct would violate its terms.

defendant, found by the jury, or based upon the fact of a prior conviction."    *Id.* at 731–32. [4]

Here, the district court's application of the Guidelines in a mandatory fashion constitutes non-constitutional    *Booker*  error.  Since Pentrack did not object on constitutional grounds below, we review the district court sentence for plain error.  *Id.* at 732 (citing Fed. R. Crim. P. 52(b)).    "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal citation and quotation omitted).  Because the district court erroneously applied the Guidelines in a mandatory fashion, and such error is clear and obvious, the first two prongs of this analysis are met.  *See id.* ("*Booker* renders the [non-constitutional] error here both clear and obvious on appeal."); *Johnson v. United States*, 520 U.S. 461, 468 (10th Cir. 1997) (error must be clear or obvious at the time of appellate consideration).

We need not address the third prong here since the fourth prong is dispositive.  *See Gonzalez-Huerta*, 403 F.3d at 736 (citing *United States v. Cotton*, 535 U.S. 625, 632-33 (2002) ("We need not resolve . . . [the third prong

---

[4] Pentrack alleged a constitutional *Booker* error in his opening brief. However, his supplemental opening brief, as well as his reply brief, abandoned this argument.  Therefore, we will not address the merits of this claim here. Pentrack also argues that the application of the Guidelines in a mandatory fashion constituted a structural error.  We previously rejected such an argument in *Gonzalez-Huerta*, 403 F.3d at 734.

of plain-error review], because even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings."))  To satisfy the fourth prong, the appellant must show the error is "both 'particularly egregious' and our failure to notice the error would result in a 'miscarriage of justice.'" *Id*. (internal citation omitted).  In addressing this prong, we look to several non-exclusive factors including

> a sentence increased substantially based on a *Booker* error, a showing that the district court would likely impose a significantly lighter sentence on remand, a substantial lack of evidence to support the sentence the Guidelines required the district court to impose, and/or a showing that objective consideration of the 18 U.S.C. § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines.

*United States v. Thomas*, 410 F.3d 1235, 1249 (10th Cir. 2005).  To meet this standard, "a generalized assertion of error anchored solely to a Sixth Amendment violation or mandatory application of the Guidelines" is insufficient to prove plain error.  *United States v. Dowlin*, 408 F.3d 647, 671–72 (10th Cir. 2005).

Pentrack fails to satisfy his burden under the fourth prong for several reasons.  First, the record is devoid of evidence suggesting that the district court was displeased with the Guidelines' range as applied to Pentrack's conduct, other than a generalized comment recognizing the truism that white-collar criminals are not dealt with lightly in the federal criminal justice system.  Such a statement, by itself, does not suggest the court viewed the sentence as unduly harsh or indicate an inclination to impose a lighter sentence if given the chance.  In fact, the court

when imposing Pentrack's sentence stated that (1) the sentence was "generous" under the circumstances; (2) Pentrack had not truly "seen the error of his ways;" and, finally, (3) Pentrack's conduct merited a sentence in the middle of the Guidelines' range.

Nor does Pentrack offer any evidence that the § 3553(a) factors would militate a lesser sentence. The court, in fact, rejected Pentrack's request for a downward departure when given the opportunity for further leniency based on the circumstances of the case. Because Pentrack simply asserts on appeal that the mandatory Guidelines per se create plain error, without any individualized evidence meeting the fourth prong, we cannot conclude that the district court would, on remand, impose a different sentence.

In sum, the district court did not commit plain error in sentencing Pentrack.

### III. Conclusion

Because the district court properly enhanced Pentrack's sentence pursuant to § 2B1.1(b)(7)(C) and Pentrack cannot satisfy the fourth prong of plain error review in conjunction with his non-constitutional *Booker* challenge, we AFFIRM.