**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DANIEL ADOLPH RODRIGUEZ,

      Defendant - Appellant.

No. 18-1449

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CR-00377-RM-1)**
_____

Grant R. Smith, Assistant Public Defender (Virginia L. Grady, Federal Public Defender, and Shira Kieval, Assistant Federal Public Defender, on the briefs), Denver, Colorado, for Defendant - Appellant.

Kelly R. Winslow, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff - Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Daniel Adolph Rodriguez appeals his sentence for a supervised release

violation, arguing the district court misapplied Colorado law in determining the grade

of his offense under the Guidelines. Because the district court could have reached the same result by applying federal law, we affirm.

## I.   BACKGROUND

In 2015, Mr. Rodriguez was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 51 months' imprisonment followed by three years' supervised release. Mr. Rodriguez began his term of supervised release on May 10, 2018.

On October 4, 2018, Mr. Rodriguez's probation officer petitioned the district court for an arrest warrant and revocation of Mr. Rodriguez's supervised release, alleging, among other violations, two instances of "possession and use of a controlled substance." App., Vol. I at 19–20. The petition noted that Mr. Rodriguez had admitted in writing to using cocaine and, on another occasion, had tested positive for cocaine. The district court granted the petition and issued an arrest warrant. When officers arrested Mr. Rodriguez, a search of his residence "revealed a fully loaded .38 special revolver, .38 caliber ammunition, suspected cocaine base, suspected marijuana, and drug paraphernalia." *Id.*, Vol. II at 6.

At his sentencing hearing on November 19, 2018, Mr. Rodriguez admitted to one instance of "possession and use of a controlled substance,"[1] along with several other violations of his supervised release conditions. Mr. Rodriguez further

---

[1] The allegation Mr. Rodriguez admitted to was based on Mr. Rodriguez's earlier statements that he had used cocaine. The Government stated at the revocation hearing that it was withdrawing the other "possession and use of a controlled substance" allegation that was based on a positive drug test. App., Vol. III at 5–6.

"stipulate[d] that there [was] a factual basis for each of these violations," although he did not elaborate on the details of that factual basis. *Id.*, Vol. III at 16–17.

The district court determined, over Mr. Rodriguez's objection, that Mr. Rodriguez's conduct constituted possession of cocaine under Colorado law, an offense punishable by more than one year's imprisonment, and was therefore a Grade B violation of his supervised release conditions. The district court declined to analyze whether Mr. Rodriguez's conduct would have constituted a Grade B or a Grade C violation under federal law. It sentenced Mr. Rodriguez to 21 months' imprisonment (the Government's recommended sentence, at the low end of the Grade B range). Explaining its choice of sentence, the district court emphasized the danger Mr. Rodriguez posed to the public because of his history of repeated drug use while in possession of a firearm. Mr. Rodriguez timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

We review the district court's application of the Sentencing Guidelines for abuse of discretion. *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008). In applying that standard, we review questions of law de novo and factual findings for clear error, "giving due deference to the district court's application of the Guidelines to the facts." *United States v. Pentrack*, 428 F.3d 986, 989 (10th Cir. 2005).

### B. *Analysis*

"In imposing a sentence for a violation of supervised release, a district court is required to consider the policy statements contained in Chapter 7 of the Sentencing

Guidelines . . . ." *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1262 (10th Cir. 2018).

Chapter Seven of the Sentencing Guidelines establishes three categories of supervised release violations based on severity of the violation: Grade A (not at issue here) includes certain enumerated offenses that are "punishable by a term of imprisonment exceeding one year," as well as "any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." U.S.S.G. § 7B1.1(a)(1). Grade B encompasses "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* § 7B1.1(a)(2). Finally, Grade C encompasses "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." *Id.* § 7B1.1(a)(3). If a supervisee commits "more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." *Id.* § 7B1.1(b). For a defendant like Mr. Rodriguez with a criminal history category of VI, a Grade C violation carries a recommended sentence of 8–14 months' imprisonment, while a Grade B violation carries a recommended sentence of 21–27 months' imprisonment.[2] *See id.* § 7B1.4(a).

Mr. Rodriguez argues the district court improperly classified his conduct as a Grade B violation rather than a Grade C violation because it wrongly determined that his

---

[2] Any sentence imposed upon revocation of Mr. Rodriguez's supervised release would have been statutorily capped at 24 months. *See* 18 U.S.C. §§ 3583(e)(3), 3559(a).

4

conduct was punishable by a term of imprisonment exceeding one year under Colorado

law.[3] First, he argues that "no Colorado case has held that a defendant can be charged

with (let alone convicted of) possession of a controlled substance based solely on prior

use[,] . . . a positive urine test[,] . . . [or] a positive urine test, in combination with the

admission of voluntary use." Aplt. Op. Br. at 13–14. On the other hand, as the

Government observes, the Colorado Supreme Court has repeatedly affirmed (albeit under

different facts than those at play here) the logic that "[t]o use [a controlled substance],

[one] must first possess it." *People v. Cagle*, 751 P.2d 614, 620 (Colo. 1988); *see also*

*Campbell v. People*, 73 P.3d 11, 14 (Colo. 2003) ("[U]se is preceded by possession.").

Second, Mr. Rodriguez argues the district court erred by considering the fact that

Mr. Rodriguez was on supervised release when he committed the offense, thus increasing

---

[3] Mr. Rodriguez also argues in his reply brief that the Colorado Constitution forbids punishing a person for possession of drugs solely on the basis of use. Colorado courts have held that the due process clause of the Colorado Constitution includes a guarantee of "equal protection of the laws." *People v. Oliver*, 745 P.2d 222, 227 (Colo. 1987). "When two criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced under the harsher statute is denied equal protection of the laws." *Id.* (quoting *People v. Mozee*, 723 P.2d 117, 126 (Colo. 1986)). Underlying this rule is the notion that "[s]tatutory classifications of crimes must be based on differences that are real in fact and reasonably related to the purposes of the legislative enactments." *Mozee*, 723 P.2d at 126; *see also, e.g.*, *People v. Abiodun*, 87 P.3d 164, 167 (Colo. App. 2003) (noting that "convictions for possession and use must merge because no possible scenario exists where use of a controlled substance can occur without possession"). Because Mr. Rodriguez failed to raise this argument until his reply brief, he has waived it. *United States v. Henry*, 852 F.3d 1204, 1207 n.1 (10th Cir. 2017). Moreover, even assuming (without deciding) the argument has merit, we would still affirm on the alternative ground discussed in the body of our opinion.

his maximum sentence under Colorado law from one year to two years.[4] Citing

Application Note Five of U.S.S.G § 7B1.1, along with *Blakely v. Washington*, 542 U.S.

296 (2004), and *Lopez v. People*, 113 P.3d 713 (Colo. 2005), Mr. Rodriguez argues a

district court may not consider a defendant's supervisee status when grading a supervised

release violation.[5] The Government argues in response that Application Note Five has no

relevance to this case and that the authority Mr. Rodriguez cites is distinguishable.

We need not resolve this dispute over the proper application of Colorado law

because we can affirm the district court on the alternative ground that Mr. Rodriguez's

conduct was punishable by more than one year under federal law. We are "free to affirm

---

[4] The district court treated Mr. Rodriguez's supervisee status as analogous to various forms of state supervision, such as parole and probation, that trigger an aggravated sentencing range under Colorado law. Mr. Rodriguez does not challenge the district court's comparison of federal supervised release and state supervision on appeal.

[5] Although we do not resolve this issue here, it is worth noting that both the U.S. Supreme Court in *Blakely*, and the Colorado Supreme Court in *Lopez*, were dealing with trial courts' sentencing decisions in the first instance—not supervised release revocation hearings. *See Blakely v. Washington*, 542 U.S. 296, 299 (2004); *Lopez v. People*, 113 P.3d 713, 715–16 (Colo. 2005). Both decisions held that a sentencing court may not depart from a statutory sentencing range based on a judicial determination that a statutory aggravating factor applies, because doing so violates the defendant's Sixth Amendment right to a jury trial. *See also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The right to a jury trial does not apply in a supervised release revocation hearing where the maximum sentence "could not exceed the remaining balance of the term of imprisonment already authorized by the [original conviction]." *United States v. Haymond*, 139 S. Ct. 2369, 2377 (2019); *see id.* at 2379–81 (discussing the interaction between the Sixth Amendment right to a jury trial and the procedure for revocation of supervised release).

a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotation marks omitted). "In exercising that discretion," we consider "whether the ground was fully briefed and argued here and below, whether the parties have had a fair opportunity to develop the factual record, and whether, in light of factual findings to which we defer or uncontested facts, [our] decision would involve only questions of law." *Feinberg v. Comm'r*, 916 F.3d 1330, 1334 (10th Cir. 2019) (quotation marks omitted). These factors support reaching the alternative ground the Government urges here: the parties briefed and argued the issue both here and below; the factual record is fully developed on the issue; and our analysis turns on the purely legal question of whether Mr. Rodriguez's conduct—the operative details of which are uncontested—would be punishable by more than one year under federal law.

Federal law leaves no room for doubt that the knowing use of a controlled substance supports a charge for possession. *See United States v. Rockwell*, 984 F.2d 1112, 1114 (10th Cir. 1993) ("There can be no more intimate form of possession than use. We hold that a controlled substance in a person's body is in the possession of that person for purposes of 18 U.S.C. § 3583(g), assuming the required *mens rea*. 'Use' in this context is synonymous with possession."), *overruled on other grounds by Johnson v. United States*, 529 U.S. 694, 698 n.2 (2000); *see also United States v. Hammonds*, 370 F.3d 1032, 1036 (10th Cir. 2004) (collecting cases) ("We continue to believe that, assuming the requisite

culpable state of mind, the connection drawn in *Rockwell* between use and possession is simply a matter of common sense.").

Given that the district court could have analyzed Mr. Rodriguez's conduct as possession under federal law, we turn to the question of whether his possession of cocaine is punishable by more than one year's imprisonment under federal law. This turns on whether the district court could have considered recidivist enhancements under federal law based on Mr. Rodriguez's prior criminal history. Absent any recidivist enhancements, Mr. Rodriguez's conduct, as simple possession, would be punishable by a maximum of one year's imprisonment. *See* 21 U.S.C. § 844(a). On the other hand, if the district court could have taken into account recidivist enhancements, it could have considered Mr. Rodriguez's three prior drug convictions and concluded that his simple possession as a prior drug offender was punishable by more than one year. *See id.* (authorizing up to three years' imprisonment where an offender has "two or more prior convictions for any drug, narcotic, or chemical offense chargeable under the law of any State").

We have repeatedly held, though until now only in unpublished cases, that a district court may consider a supervisee's past drug convictions in determining the grade of a violation based on simple possession. *See United States v. Robles*, 447 F. App'x 892, 895 (10th Cir. 2012) (unpublished) (noting that although "simple possession of cocaine is [normally] a federal crime, punishable by a term of imprisonment of less than one year if the defendant has no prior relevant drug convictions, it is punishable by imprisonment of a year or more if the defendant has one or more prior relevant drug convictions"); *United*

8

*States v. Gonzalez-Perez*, 343 F. App'x 300, 302 (10th Cir. 2009) (unpublished) ("The Sentencing Commission certainly intended the use of the [defendant's] prior conviction . . . as the prior conviction was relevant to . . . his supervised release violation under § 7B1.3(a)(1), (b)."). Other circuits have similarly held that district courts may consider prior conduct in determining how a supervisee's violation is punishable under federal law, reasoning:

> [T]he very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the "conditional liberty" he was granted following his conviction of the underlying offenses. . . . [This] determination . . . necessarily requires consideration of the defendant's criminal history unencumbered by a notice requirement applicable to an original criminal prosecution.

*United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015); *see also United States v. Montgomery*, 893 F.3d 935, 940 (6th Cir. 2018); *United States v. Seiber*, 516 F. App'x 208, 215 (3d Cir. 2013) (unpublished); *United States v. Denton*, 611 F.3d 646, 651–52 (9th Cir. 2010); *cf. Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013) (noting that "the commonsense meaning of the term 'punishable'" in a federal firearms ban "refers to any punishment capable of being imposed, not necessarily a punishment specified by statute"). Because we find this reasoning persuasive, we now hold that a district court may consider recidivist enhancements based on prior criminal offenses when determining the grade of a supervised release violation.

Mr. Rodriguez argues this approach is incorrect because it bypasses statutory procedures for imposing recidivist enhancements in criminal prosecutions. He points to 21 U.S.C. § 851, which provides:

9

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon. . . .
>
> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged . . . .

21 U.S.C. § 851(a)(1), (b). The statute further provides that a defendant may challenge the information and, if the defendant challenges it, requires the sentencing court to hold a hearing to determine the truth of the allegations. *Id.* § 851(c). Mr. Rodriguez argues "the district court was . . . not permitted to find that [he] committed a federal felony" without following these "very unique procedures" for prosecuting simple possession as a felony based on prior drug offenses. Reply Br. at 10. But the procedures outlined in 21 U.S.C. § 851 apply only to criminal prosecutions in the first instance. They have no bearing on revocation proceedings where a court must determine the severity of a supervised release violation by inquiring into the maximum punishment that conduct *could have* merited were it independently charged and prosecuted. *See United States v. Saavedra-Villasenor*, 554 F. App'x 767, 771 (10th Cir. 2014) (unpublished) ("[T]he actual sentence imposed on a defendant for committing the underlying offense is not the proper measure for classifying that offense . . . . Rather, the relevant consideration is how the actual conduct giving rise to the violation is *punishable* under applicable law."); *cf. United States v. Hernandez-Garduno*, 460 F.3d 1287, 1293 (10th Cir. 2006) (describing the inquiry under a similarly-worded Guidelines provision as whether an offense is "*punishable* by more

10

than one year of imprisonment, irrespective of the actual sentence imposed"). Under the process for grading supervised release violations, a district court may consider recidivist enhancements based on prior criminal offenses in determining the grade of a supervised release violation.

Mr. Rodriguez also argues that taking his prior offenses into account entails a "hypothetical approach" that the Supreme Court condemned in *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 576 (2010). In *Carachuri-Rosendo*, a permanent United States resident faced deportation after committing two state misdemeanor drug offenses in Texas. *Id.* at 566. For the first offense (possession of marijuana), he received twenty days in jail. *Id.* For the second (possession without prescription of an antianxiety medication), he received ten days in jail. *Id.* Although, in prosecuting the second offense, Texas could have sought a sentencing enhancement based on the defendant's prior conviction, it did not. *Id.* at 570–71. In his subsequent removal proceedings, the defendant sought cancellation of removal, but the immigration judge denied his application, concluding the defendant's second possession conviction was a disqualifying "aggravated felony." *Id.* at 571. The BIA and the Fifth Circuit both affirmed, with the Fifth Circuit reasoning that the second conviction could have carried a recidivist enhancement and was therefore punishable by a two-year sentence under federal law, making it an aggravated felony for purposes of the Immigration and Nationality Act (INA). *Id.* at 572–73.

The Supreme Court rejected this "hypothetical approach," reasoning that it was at odds with the text of the INA, "which limits the Attorney General's cancellation power only when, *inter alia*, a non-citizen 'has . . . been *convicted* of a[n] aggravated felony.'"

11

*Id.* at 576 (quoting 8 U.S.C. § 1229b(a)(3)). Because the core inquiry under the INA was whether the applicant *had been convicted* of an aggravated felony, and that fact turned on prior prosecutors' "discretion when electing whether to pursue a recidivist enhancement," the Supreme Court held it was improper for the immigration judge to assume the recidivist enhancement would actually have been applied under federal law—particularly given the applicant served only ten days for his offense. *Id.*

Here, by contrast, the question is not how to categorize Mr. Rodriguez's prior *convictions*, but how to grade his present supervised release violation. As the Guidelines envision, the grade of the violation turns on the maximum punishment that *could* have been imposed for Mr. Rodriguez's conduct. Thus, it is entirely proper for a district court to consider possible sentences because the inquiry in supervised release revocation proceedings is inherently hypothetical.[6]

Mr. Rodriguez's conduct was punishable under federal law by more than one year's imprisonment. As a result, the district court correctly graded Mr. Rodriguez's supervised release violation as a Grade B violation.

## III. CONCLUSION

We AFFIRM the district court.

---

[6] Two other circuits have considered this issue and found, as we do today, that *Carachuri-Rosendo* is inapplicable in the context of supervised release revocation proceedings. *See United States v. Montgomery*, 893 F.3d 935, 940–41 (6th Cir. 2018); *United States v. Wynn*, 786 F.3d 339, 342–43 (4th Cir. 2015).