FILED
United States Court of Appeals
Tenth Circuit

March 14, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN ANDERSON,

    Defendant - Appellant.

No. 21-2151

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:20-CR-00897-KWR-1)**
_____

Martín Juárez, Assistant Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Fred J. Federici, Assistant United States Attorney (Alexander M.M. Uballez, United States Attorney, with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

In December of 2019, Mr. Steven Anderson was stopped by police after a woman complained he was harassing her and an officer observed him walking in the street in violation of a city ordinance. Mr. Anderson provided the officers with false identifying

information and was arrested for concealing his identity. During a search incident to arrest, law enforcement found a firearm and a crystal-like substance determined to be methamphetamine on his person. Following a failed motion to suppress, Mr. Anderson pled guilty to being a felon in possession. At sentencing, the district court applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense and sentenced Mr. Anderson to fifty-one months in prison.

On appeal, Mr. Anderson challenges the denial of his motion to suppress, arguing that law enforcement lacked reasonable suspicion to stop him and that the firearm was discovered in violation of his Fourth Amendment rights. He also argues the district court erroneously applied § 2K2.1(b)(6)(B), primarily because it relied on an uncorroborated police report not admitted into evidence. We hold that law enforcement had reasonable suspicion to stop Mr. Anderson and that he failed to show a Fourth Amendment violation was the but-for cause of the discovery of the firearm. We also hold that the district court did not err in applying the § 2K2.1(b)(6)(B) enhancement. Accordingly, we affirm Mr. Anderson's conviction and sentence.

**Background**

On December 17, 2019, Sergeant Ignas Danius was patrolling a high crime area in Albuquerque, New Mexico and was flagged down by a woman pointing toward Mr. Anderson. The woman told Sgt. Danius that Mr. Anderson was harassing her. Rec., vol. I at 135. Sgt. Danius began to follow Mr. Anderson, whom he observed walking in the street.

2

Sgt. Danius called for backup and approached Mr. Anderson once other officers arrived. Sgt. Danius asked Mr. Anderson whether he had identification, to which Mr. Anderson said no. *Id.* at 137. Sgt. Danius then asked Mr. Anderson if he had any weapons on him. *Id.* Mr. Anderson initially did not respond but upon further questioning stated he did not have any weapons. *Id.* In part because Mr. Anderson appeared particularly nervous, raised his hands, and was wearing a bulky jacket, Sgt. Danius decided to conduct a pat-down for weapons. Mr. Anderson was noncompliant and was therefore handcuffed. Sgt. Danius was eventually able to conduct the pat-down but found no weapons.

In response to further questioning, Mr. Anderson repeatedly provided Sgt. Danius with false identifying information, including a false name and a social security number belonging to another person. *Id.* at 138. Sgt. Danius arrested Mr. Anderson for concealing his identity. Law enforcement later ran Mr. Anderson's fingerprints, determined his actual identity, and discovered he had two outstanding felony arrest warrants. Rec., vol. II at 66.

During a search incident to arrest, Sgt. Danius found a stolen, loaded handgun in Mr. Anderson's waistband and baggies filled with a crystal-like substance. *Id.* Sgt. Danius later found a similar baggie in Mr. Anderson's sock. *Id.* Based on Sgt. Danius's training and experience, he identified the substance in the baggies to be methamphetamine. *Id.* This was confirmed by a field test of the substance from Mr. Anderson's sock, which returned positive for methamphetamine. *Id.* Mr. Anderson was

3

charged in state court with trafficking methamphetamine, among other crimes. Those charges were dismissed when he was indicted in this case for being a felon in possession.

Mr. Anderson filed a motion to suppress, which the district court denied. He then entered a conditional guilty plea reserving his right to appeal the denial of his suppression motion. At sentencing, Mr. Anderson objected to the application of a four-level guideline enhancement under § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense—to wit, trafficking methamphetamine. He argued there was insufficient evidence to support the enhancement. The district court denied the objection and sentenced Mr. Anderson to fifty-one months' imprisonment.

### The Motion to Suppress

In his suppression motion, Mr. Anderson argued that Sgt. Danius improperly stopped him under *Terry v. Ohio*, 392 U.S. 1 (1968), because the officer lacked reasonable suspicion that he committed a crime, particularly criminal harassment. He argued there was no evidence of a pattern of conduct that would have caused a reasonable person substantial emotional distress, as required by the relevant New Mexico statute. *See* N.M. Stat. Ann. § 30-3A-2. The district court found that Sgt. Danius credibly testified that the woman, who appeared frightened, concerned, and shaken up, flagged Sgt. Danius down and pointed toward Mr. Anderson. According to Sgt. Danius, the woman then said, "He's harassing me. He's not leaving me alone. He's asking me for my number. He's asking to date him. If I have a boyfriend, and then he asked me for money." Rec., vol. I at 141. Based on this testimony, the court held Sgt. Danius reasonably suspected Mr. Anderson of committing harassment.

4

The court also found that "Sgt. Danius credibly testified he observed [Mr. Anderson] walking in the street," *id.*, and held that Sgt. Danius had reasonable suspicion to stop him for violating the city ordinance prohibiting walking "along or upon" a roadway when a sidewalk is available, *see* Albuquerque Code Ordinance § 8-2-7-7(A).[1] Mr. Anderson did not contend otherwise.

Mr. Anderson did argue that Sgt. Danius lacked reasonable suspicion to conduct the pat-down frisk, but he did not specifically argue that the frisk resulted in the discovery of his firearm. The district court found that Sgt. Danius "reasonably and credibly believed that [Mr. Anderson] was abnormally nervous and had his hands raised." Rec., vol. I at 142. It also noted that Mr. Anderson fled from the scene of the alleged harassment, did not have identification, did not answer when first asked if he was armed, repeatedly stated he did not know why he was being stopped, and was wearing multiple layers of clothing. The court held Sgt. Danius had reasonable suspicion to frisk Mr. Anderson for weapons. The court further noted that no evidence was found during the pat-down, and held that the pat-down was not the but-for cause of the discovery of the firearm. The court therefore denied Mr. Anderson's motion to suppress.

**Standard of Review**

We review the denial of a suppression motion for clear error with respect to findings of fact and de novo with respect to the ultimate question of reasonability. *United*

---

[1] Concerning this jaywalking ordinance, Mr. Anderson argued the stop constituted selective enforcement in violation of his equal protection rights. The district court rejected this argument, and Mr. Anderson does not renew it on appeal.

*States v. Gambino-Zavala*, 539 F.3d 1221, 1225 (10th Cir. 2008).  Evidence is viewed "in the light most favorable to the government."  *Id.*  Suppression arguments are preserved through "sufficiently definite, specific, detailed and nonconjectural factual allegations." *Id.* at 1227 n.2 (quoting *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004)).  When a defendant fails to raise a particular suppression argument in district court, the argument is waived absent a showing of good cause.  *See United States v. Warwick*, 928 F.3d 939, 944 (10th Cir. 2019); Fed. R. Crim. P. 12(c)(3).  Failure to show good cause precludes even plain error review.  *United States v. Bowline*, 917 F.3d 1227, 1236–37 (10th Cir. 2019).

A district court's application of the sentencing guidelines is reviewed for abuse of discretion.  *United States v. Rodriguez*, 945 F.3d 1245, 1248 (10th Cir. 2019).  "In applying that standard, we review questions of law de novo and factual findings for clear error, 'giving due deference to the district court's application of the Guidelines to the facts.'"  *Id.* at 1249 (quoting *United States v. Pentrack*, 428 F.3d 986, 969 (10th Cir. 2005)).  "In particular, we review the application of § 2K2.1(b)(6)(B) in a given case for clear error."  *United States v. Leib*, 57 F.4th 1122, 1125–26 (10th Cir. 2023).  We also review "a district court's assessment of the reliability of evidence supporting a sentencing enhancement" for clear error.  *United States v. Martinez*, 824 F.3d 1256, 1261 (10th Cir.

2016).  *But see id.* at n.6 (stating the abuse of discretion standard may be more appropriate).[2]

## Discussion

### A. Mr. Anderson's Suppression Arguments

On appeal, Mr. Anderson renews his arguments that Sgt. Danius lacked reasonable suspicion both to stop him for committing harassment and to conduct a pat-down frisk. He also raises new arguments, challenging the district court's conclusions concerning reasonable suspicion to stop him for violating the jaywalking ordinance and the causal nexus between the pat-down and the firearm he sought to suppress.  He does not, however, challenge the court's factual findings.

It is well settled that, notwithstanding the Fourth Amendment's prohibition on unreasonable searches and seizures, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30).  This is not "an onerous standard."  *United States v. Simpson*, 609 F.3d 1140, 1153 (10th Cir. 2010).  Rather, "as long as [an officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved

---

[2] The government argues that some of Mr. Anderson's challenges to his sentence are unpreserved and should be reviewed for plain error.  We need not address this argument because we conclude that Mr. Anderson's challenges would fail even if they were preserved.

in any illegality." *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004).

Furthermore, "an officer need not rule out the possibility of innocent conduct, or even

have evidence suggesting a fair probability of criminal activity." *United States v.*

*Esquivel-Rios*, 725 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks and

citations omitted).

### a. Reasonable Suspicion for the Stop

The district court held that Sgt. Danius reasonably suspected Mr. Anderson of

harassment and jaywalking. Because reasonable suspicion of either offense is sufficient

to justify a *Terry* stop, we need only determine whether Sgt. Danius reasonably suspected

that Mr. Anderson committed one of these offenses.

For the first time on appeal, Mr. Anderson asserts Sgt. Danius lacked reasonable

suspicion that he violated the jaywalking ordinance. Specifically, he argues the

ordinance does not proscribe walking on a road shoulder, where he was walking. Mr.

Anderson acknowledges that he did not make this specific argument below but argues

that the district court committed plain error.[3] Mr. Anderson's failure to raise this

argument below constitutes waiver,[4] and he does not attempt to show good cause.

---

[3] He also argues that, based on *Yee v. Escondido*, 503 U.S. 519, 534 (1992), he is permitted to raise this argument on appeal because it was encompassed by his general argument that there was no reasonable suspicion to stop him. As the government points out, however, we have rejected this construction of *Yee*. *See Parker Excavating, Inc. v. Lafarge West, Inc.*, 863 F.3d 1213, 1223 (10th Cir. 2017).

[4] The government contends this new argument is also precluded by the conditional plea agreement, which gives Mr. Anderson the right to appeal the suppression decision only on grounds argued in district court. We need not decide this issue because we conclude the argument is waived.

Nonetheless, Mr. Anderson's argument would fail even under plain error review because it relies on a faulty reading of the ordinance, which prohibits "walk[ing] *along* or upon an adjacent roadway" if a sidewalk is provided. § 8-2-7-7(A) (emphasis added).

Because Mr. Anderson's new argument fails, we are not required to decide whether there was reasonable suspicion that he committed harassment in violation of the New Mexico statute. We nonetheless conclude, on de novo review, that there was reasonable suspicion to stop Mr. Anderson to investigate the alleged harassment. First, the woman who flagged Sgt. Danius down specifically claimed Mr. Anderson was harassing her. Second, the fact that she flagged Sgt. Danius down conveys she was concerned enough to seek police assistance and perhaps had significant concerns about her safety. Similarly, Sgt. Danius's observation of the woman's demeanor supports a reasonable suspicion that Mr. Anderson's actions were causing her emotional distress. Finally, the statement "He's not leaving me alone" indicates Mr. Anderson was engaging in some sort of repetitive conduct and supports a reasonable suspicion there was the requisite pattern of conduct. At this stage, Sgt. Danius was not required to have all the information and evidence needed to convict Mr. Anderson of harassment. The information available to him was sufficient to meet the low reasonable suspicion bar, and thus the district court did not err in finding there was reasonable suspicion of harassment.[5]

---

[5] Mr. Anderson argues the district court violated Fed. R. Crim. P. 12(d) by not explaining why it rejected his argument on this issue. To the contrary, the court recounted many facts that "amply support a reasonable suspicion of harassment." Rec., vol. I at 141.

Therefore, Sgt. Danius did not violate Mr. Anderson's Fourth Amendment rights by initiating a *Terry* stop.

### b.  The Pat-Down Frisk

During an investigative stop, an officer may conduct a limited search for weapons if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.  The parties dispute whether Sgt. Danius had the reasonable suspicion necessary to conduct the pat-down frisk of Mr. Anderson.  We need not decide this issue because Mr. Anderson has failed to show there was a causal nexus between the pat-down and the discovery of the firearm. *See United States v. Goebel*, 959 F.3d 1259, 1268 (10th Cir. 2020); *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (defendant bears the burden of showing a nexus between the alleged violation and the challenged evidence).

Mr. Anderson argues that the pat-down prolonged the stop and led to the discovery of the firearm.  An unreasonably prolonged detention is unconstitutional. *United States v. Samilton*, 56 F.4th 820, 827 (10th Cir. 2022).  However, even if a defendant shows that a detention was impermissibly prolonged, evidence will only be suppressed if he can "establish a causal link between the violation and the discovery of the contested evidence." *Goebel*, 959 F.3d at 1268.  "Evidence will not be suppressed as fruit of the poisonous tree unless an unlawful search is *at least* the but-for cause of its discovery." *United States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006) (emphasis in original).

We agree with the district court and the government that Mr. Anderson failed to show a causal nexus between the pat-down and the discovery of the firearm.  Critically,

10

no evidence was found during the pat-down.  The firearm was instead found in a search

incident to Mr. Anderson's arrest for concealing his identity.

It is undeniable that the frisk prolonged the stop.  But Mr. Anderson would have

been arrested and the gun would have been discovered regardless of the pat-down.  Sgt.

Danius asked Mr. Anderson if he had identification before initiating the pat-down.  In

fact, body camera footage shows Sgt. Danius asked this question within about thirty

seconds of getting out of his vehicle and approaching Mr. Anderson.  It thus appears Sgt.

Danius was interested in ascertaining Mr. Anderson's identity from the inception of the

stop.

Moreover, there is no evidence to suggest that Sgt. Danius's reasons for

continuing to inquire into Mr. Anderson's identity were derived from the pat-down.  It is

well-established "that questions concerning a suspect's identity are a routine and

accepted part of many *Terry* stops."  *Hiibel v. Sixth Judicial Dist. Court of Nev.,*

*Humboldt Cty.*, 542 U.S. 177, 186 (2004).  This questioning allows law enforcement to

determine whether the suspect has any outstanding warrants or a history of violence or

mental illness and helps officers assess personal and public safety.  *Id.*  Indeed, Sgt.

Danius testified at the suppression hearing that identifying involved parties is "police

work 101."  Rec., vol. IV at 41.  Sgt. Danius was also entitled to request Mr. Anderson's

identification to cite him for violating the jaywalking ordinance.

Notably, Mr. Anderson does not argue that anything about the pat-down led him to

repeatedly lie about his identity.  He was a felon in possession of a loaded firearm with

outstanding arrest warrants.  Being truthful about his identity was certain to lead to an

11

arrest and further charges, and his incentives to conceal his identity were not altered by any extension of the stop required to conduct the frisk.

For these reasons, we are not persuaded that the pat-down was the but-for cause of the discovery of the firearm.

## B. Sentencing Enhancement

At sentencing, Mr. Anderson objected to the application of the § 2K2.1(b)(6)(B) enhancement for possessing a firearm in connection with another felony. He argued there was insufficient evidence to find that he possessed methamphetamine.[6] The district court denied Mr. Anderson's objection, holding that the government met its burden in proving the enhancement applied by a preponderance of the evidence. In doing so, it cited the attachments to the government's sentencing memorandum including the criminal complaint, a police report authored by Sgt. Danius, and the related state indictment. *Id.* at 116. Of importance to the court, the police report stated that the substance found in Mr. Anderson's sock tested positive for methamphetamine and that Sgt. Danius observed evidence consistent with narcotics trafficking. *Id.* The court also highlighted that Mr. Anderson had been charged with drug trafficking in state court in connection with the instant arrest. *Id.*

---

[6] Mr. Anderson also argued the government violated Fed. R. Crim. P. 16 and the district court's discovery order by failing to produce additional evidence of methamphetamine possession. The district court denied Mr. Anderson's oral motion because he did not file a written motion even though Probation had made clear in the PSR disclosed months prior that it was recommending the enhancement.

On appeal, Mr. Anderson challenges the enhancement on multiple grounds. He begins by arguing that the government provided inaccurate information to the district court because the prosecutor erroneously stated at sentencing that testimony about methamphetamine was given at the preliminary and suppression hearings. But Mr. Anderson did not object to the misstatement and there is no evidence that it was material to the district court, which did not mention any such testimony when denying the objection or otherwise.

He similarly contends the district court erred in recounting the information in the police report. The court said Sgt. Danius stated in the report that "possession of multiple packaging materials (clear plastic baggies) and containers (black box) as well as individually packaged narcotics was consistent with narcotics sales and trafficking." *Id.* The court continued: "*In addition*, Mr. Anderson . . . was in possession of drug paraphernalia, as indicated in the report." *Id.* (emphasis added). Mr. Anderson argues that the police report does not mention paraphernalia other than the clear plastic baggies and black box. However, the government aptly points out that the police report identifies "another small clear container" as "drug paraphernalia." Rec., vol. II at 66. Furthermore, a reading of the sentencing transcript alongside the police report makes clear that the court was referencing two separate statements in the police report: one describing Mr. Anderson's possession of drug paraphernalia and one drawing the conclusion that the paraphernalia was consistent with drug trafficking. There is no indication that the district court was relying on evidence that did not exist or was not presented.

Mr. Anderson next argues it was improper for the district court to rely on the state charge because it was dismissed. But Mr. Anderson is not entitled to a favorable inference from this dismissal. *See United States v. Farnsworth*, 92 F.3d 1001, 1005 n.2, 1010 (10th Cir. 1996) (referencing dismissed state charges in upholding the district court's application of § 2K2.1(b)(6)(B)[7]); *Gambino-Zavala*, 539 F.3d at 1230 n.3 (sentence can be enhanced on the basis of uncharged or acquitted conduct); *United States v. Ruby*, 706 F.3d 1221, 1230 (10th Cir. 2013) (acquittal in state court under the beyond a reasonable doubt standard bears little weight on whether the preponderance standard can be met at federal sentencing). In fact, the PSR states the charges were dropped due to the instant federal case.

Most notably, Mr. Anderson argues for the first time that it was improper for the court to rely on a police report not admitted into evidence without specifically determining that it was reliable. In doing so, Mr. Anderson relies on our unpublished decision in *United States v. Padilla*, 793 F. App'x 749 (10th Cir. 2019). There, the defendant's offense level was increased based on information in a police report that was not admitted into evidence or supported by corroborating evidence. *Id.* at 762. We held the district court was required to "make an on-the-record, individualized reliability assessment" before relying on the report. *Id.* However, we explained that a sentencing court *can* rely on information in an unadmitted police report if the record contains

---

[7] Section 2K2.1(b)(6)(B) was previously numbered 2K2.1(b)(5).

14

corroborative evidence and the relevant information is summarized somewhere in the record (e.g., the PSR). *Id.* at 758 n.5.

Although *Padilla* is non-binding, it is also easily distinguishable from the instant case in two material ways. First, the police report in *Padilla* was not part of the record at all and had not been disclosed in discovery. *Id.* at 752. Here, the police report and the criminal complaint were exhibits to both the government's opposition to the motion to suppress and its sentencing memorandum. The government also submitted the state indictment charging Mr. Anderson with trafficking methamphetamine as an exhibit to its sentencing memorandum. Although none of these documents were admitted into evidence at a hearing, they were part of the record and Mr. Anderson had the opportunity to test the reliability of the police report at the suppression hearing by cross examining Sgt. Danius.

Second, the police report here is strongly corroborated by Sgt. Danius' body camera footage, which *was* admitted into evidence at the suppression hearing. The video depicts officers recovering a substance stored in the manner described in the report. Consistent with the report, Mr. Anderson is recorded in the video claiming the alleged drugs were fake. The video also includes audio of Mr. Anderson admitting the substance from his sock "may be real," which supports application of the enhancement. The veracity of the police report is further supported by the district court's repeated finding that Sgt. Danius was a credible witness. Although police reports are not inherently reliable, *see Ruby*, 706 F.3d at 1230, the police report here has significant indica of

15

reliability and allowed the district court to properly determine, by a preponderance of the evidence, that Mr. Anderson was engaged in drug trafficking.

Importantly, Mr. Anderson did not challenge the reliability of the police report in district court. Rather, he argued instead that the government's exhibits were not evidence, did not provide enough information, were not subject to cross examination, and omitted evidence favorable to Mr. Anderson.

We recently held in *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022), that *Padilla* was "incorrect" in concluding that our prior caselaw determined the issue of "whether a mere objection to the reliability of the evidence in the PSR is sufficient to trigger a district court's fact-finding obligation." In *McDonald*, the defendant made several objections to facts in the PSR, arguing "that the source of the information was not credible or reliable." *Id.* We clarified that "[a]ttacking a witness's credibility or reliability is different than asserting that their statements or information are false." *Id.* at 1097. Thus, to trigger a district court's fact-finding obligation, a defendant must affirmatively "make a showing that the information in the [PSR] was unreliable *and articulate the reasons why the facts contained therein were untrue or inaccurate*." *Id.* at 1096 (quoting *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008)) (emphasis and alteration in original). "In other words, the defendant must assert that the facts alleged . . . are false." *Id.* at n.3.

Although Mr. Anderson objected to the claim that he possessed methamphetamine, he did not contend in district court that specific statements in the police report were false and does not do so on appeal. For example, he does not argue

16

that he did not possess a crystal-like substance which appeared to Sgt. Danius to be methamphetamine, nor that the substance was not stored in the manner described in the report or did not test presumptively positive for methamphetamine in a field test. Instead, Mr. Anderson now argues the police report was insufficient to support the enhancement because it was not admitted into evidence, was not corroborated by other evidence, and was not determined to be reliable. We disagree. The police report was twice included in the record, corroborated by the body camera footage and the state indictment, and authored by a witness deemed credible by the district court. This was sufficient for the court to rely upon it in applying § 2K2.1(b)(6)(B).

### C. *Brady* Claim

On appeal, Mr. Anderson also asserts the government failed to disclose evidence of methamphetamine possession in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In particular, he points out that the government did not disclose photographs of the drugs, additional test results, or information about the field test used. He argues this failure to disclose prevented him from challenging the evidence used to enhance his sentence.

To establish a *Brady* violation, a defendant must show the government suppressed material evidence that was favorable to him. *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117 (10th Cir. 2011). Mere speculation about whether evidence would have been favorable to the defendant is insufficient to support a *Brady* claim. *See id.* Particularly because Mr. Anderson was indicted in state court for trafficking methamphetamine, it is likely some of the evidence he requested exists. We need not speculate, however,

because Mr. Anderson has not shown any such evidence would be favorable to him. His *Brady* claim therefore fails.

## Conclusion

We are not persuaded that the firearm was discovered in violation of Mr. Anderson's Fourth Amendment rights or that the district court miscalculated the applicable sentencing guidelines. Accordingly, we affirm the denial of his motion to suppress, as well as his sentencing enhancement.