**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 11, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ELOY ROMERO,

    Defendant - Appellant.

No. 23-2136
(D.C. No. 1:21-CR-00559-JCH-1)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **SEYMOUR**, and **EBEL**, Circuit Judges.
_____

During a traffic stop, police learned that Eloy Romero had a suspended driver's license and that the car he was driving was uninsured. Because Mr. Romero could not legally drive the car away from the stop, police made the decision to impound the car and began performing an inventory search. During that search, officers looked inside a backpack, finding a safe, and looked inside the safe, finding a gun and a large quantity of drugs. After an unsuccessful motion to suppress the evidence found in the backpack, Mr. Romero was convicted at trial of federal gun and drug charges. This appeal seeks to reverse the district court's decision to deny Mr. Romero's motion to suppress.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Romero argues on appeal that the police officers were required to allow him to remove his backpack from the car before the inventory search. Because this is an argument he failed to present to the district court, we hold that Mr. Romero waived the issue and we therefore affirm his conviction.

## I.    Background[1]

On the night of February 25, 2021, an Albuquerque police officer noticed a white Toyota Camry driving strangely. The car drove into a motel parking lot, circled twice, and then drove across the street to a largely empty restaurant parking lot. The car parked and a man, later identified as Mr. Romero, got out and began crawling around under the steering column with a flashlight. Believing that Mr. Romero might be trying to fix an ignition wire in a stolen car, the officer shared his observations with a detective, who ordered marked units in the area to stop the car, which had left the parking lot.

After two failed efforts to get Mr. Romero to pull over by using lights and sirens, officers succeeded on their third attempt when Mr. Romero pulled over on the side of a road. By this point, officers knew the car's registration was suspended; generally, this is an indication that the car is not insured. When asked for his license, insurance, and registration, Mr. Romero handed the officer a Social Security card. Asked again for his registration and insurance, Mr. Romero responded that the car belonged to his friend.

---

[1] The Court limits its recounting of the factual background to facts relevant to the issues on appeal.

Mr. Romero was then asked to step out of the car, and an officer patted him down. Mr. Romero told officers he had stopped to change a fuse under the dash, and the absence of damage to the steering column led officers to conclude that the stop no longer concerned a potential auto theft. Nonetheless, the car's lack of insurance meant that police were going to tow the car away at some point. Mr. Romero's further admission that his license was suspended for failure to pay child support only reinforced the fact that he could not legally drive the car away at the end of the encounter with police.

Approximately five minutes into the traffic stop, and after police had established Mr. Romero's license suspension and lack of insurance, a police officer began to perform an inventory search of the car. He picked up, handled, and looked inside a backpack before turning to talk to Mr. Romero. The officer asked Mr. Romero if the stuff in the car belonged to him. Mr. Romero indicated that most of it did. Holding the backpack, unzipping it, and reaching inside it, the officer asked if the backpack belonged to him. Mr. Romero said no and speculated that the backpack belonged to a friend. The officer then removed a safe from the backpack, and Mr. Romero also denied ownership of the safe. The safe opened without a code, and the officer found within it a gun and pills.

Based on finding the gun and pills, the officers decided to seal the car and seek a search warrant. Mr. Romero was cited for traffic and motor-vehicle violations, and officers drove him home. Three business days later, police applied for and received a

3

search warrant for the car, where they found a firearm, methamphetamine, heroin, and fentanyl pills.

Mr. Romero was ultimately charged with possessing methamphetamine and fentanyl with an intent to distribute under 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (B), and with possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). Mr. Romero moved to suppress the evidence resulting from his stop, arguing that officers lacked reasonable suspicion to stop him, that they arrested him without probable cause, and that they impounded his car both in violation of Albuquerque Police Department's (APD) procedures and without an appropriate community-caretaking justification. Mr. Romero further argued that even if the impoundment itself was justified, the associated inventory search was unlawful because it was not conducted in accordance with APD procedures on vehicle searches incident to arrest, and because it was pretextual. The district court rejected these arguments and denied Mr. Romero's motion. He was subsequently convicted at trial. This appeal followed.

## II.   Analysis

Federal Rule of Criminal Procedure 12(b)(3)(C) establishes that a motion to suppress evidence must be made before trial. Federal Rule of Criminal Procedure 12(c)(3) establishes that the consequence of not making a timely motion under Rule 12(b)(3) is that the motion is waived. *See, e.g., United States v. Anderson*, 62 F.4th 1260, 1265–66 (10th Cir. 2023).

4

Accordingly, "[w]hen a motion to suppress evidence is raised for the first time on appeal, we must decline review." *United States v. Brooks*, 438 F.3d 1231, 1240 (10th Cir. 2006). We have also held that this applies "not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion." *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991).

Mr. Romero made no mention of his theory that he was entitled to exclude the backpack from an inventory search in either his initial motion in the district court, or in his reply to the government's response. He first raised this issue on appeal. At no point in the proceedings before this Court has Mr. Romero asserted that there is good cause for this Court to consider his new argument, notwithstanding its untimeliness. Absent any evidence for good cause, we decline to find it here.

Mr. Romero also argues on appeal that the search was pretextual. To the extent this argument is not predicated on the assertion that the backpack could have been removed, thus preserving the argument, we are not persuaded the officers were acting solely for investigative purposes. *See United States v. Trujillo*, 993 F.3d 859, 871 (10th Cir. 2021).

Having found Mr. Romero's primary argument waived and other argument without merit, we decline to disturb any of the district court's holdings or review any outstanding issues not reached by the district court.

## III.  Conclusion

Mr. Romero has presented the Court with an argument made for the first time on appeal for the suppression of evidence and has made no showing of good cause to justify his untimeliness. Accordingly, we decline to consider his appeal and uphold his conviction.

Entered for the Court

Stephanie K. Seymour
Circuit Judge